708 So.2d 626 (1998)
Abdullah Hakeem MUTEEI, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-3050.
District Court of Appeal of Florida, Third District.
March 18, 1998.
*627 Bennett H. Brummer, Public Defender, and Louis K. Nicholas, II, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellee.
Before GERSTEN, FLETCHER and SORONDO, JJ.
FLETCHER, Judge.
Abdullah Hakeem Muteei appeals his convictions for attempted first-degree murder, use of a firearm in the commission of a felony, shooting into an occupied vehicle, and battery, contending that the trial court committed fundamental error by failing to give a self-defense jury instruction. We affirm his convictions.
On the fateful day of Muteei's offenses, his ex-wife, Naomi Collins, drove her friend Neville Blake's car, picking up her son[1] from day care and Blake from his place of work. When they arrived at Collins' home Muteei was there waiting. When Collins opened the back door of her car to remove her son, she saw that Muteei was holding a gun. Muteei and Collins began to argue and then struggle. Both fell to the ground and fought to get the gun which had fallen, until Muteei dragged Collins away from the gun and picked it up. He then ran to the front passenger side of the car where Blake had remained sitting and shot three times into the car through the side window and twice through the front windshield, hitting Blake several times. Muteei took Collins' son out of the back of the car, then rode off alone on his bicycle.
At trial, Muteei testified that he had found the gun that day while working on a customer's yard and was taking it to his cousin, only stopping at Collins' house to see if she was there so that he could take their daughter home. He claimed that he struggled with Collins when she attempted to take the gun away from him. He also claimed that he saw Blake moving inside the car and shot at him only when he saw him raise his arms, believing that Blake had a gun and was about to shoot.
The evidence also reflected that the driver's side window was shattered by two bullets coming from inside the car. However, it could not be determined whether the bullets originated from inside the car or traveled through the car from the passenger side window before exiting out the driver's side. No second firearm was found.
Muteei's defense counsel did not request a self-defense jury instruction, and did not object to the instructions as given to the jury, which included instructions on justifiable and excusable attempted homicide,[2] but not selfdefense. In closing argument defense counsel *628 claimed that Muteei was defending himself and asked the jury to rely on the justifiable attempted homicide instruction.
Muteei contends that, as the evidence was sufficient to warrant a self-defense jury instruction, which instruction would have been the basis of the only real defense raised and argued at trial, the trial court's failure to give the self-defense instruction constitutes fundamental error. Reversal would thus be required notwithstanding the defense's failure to request the instruction or to object to the instructions as given. In support of his argument, Muteei relies principally upon Thomas v. State, 526 So.2d 183 (Fla. 3d DCA), rev. denied, 536 So.2d 245 (Fla.1988). Indeed, in Thomas, we concluded that it was fundamental error to fail to instruct the jury on a defense that was the foundation of the defendant's position at trial, where there was evidence which, if believed, would support that defense. As a consequence the conviction was reversed even though the defendant did not submit an adequate proposed jury instruction on the subject for consideration by the court.[3],[4]
Our decision to affirm here is predicated upon the clear and unequivocal language of the supreme court in Sochor v. State, 619 So.2d 285, 290 (Fla.), cert. denied, 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993).
"Fundamental error is error which goes to the foundation of the case. Failure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error. Voluntary intoxication is a defense to, but not an essential element of, kidnapping. Therefore, the state did not have to disprove voluntary intoxication in order to convict Sochor of felony murder based on the underlying felony of kidnapping. Because the complained-of instruction went to Sochor's defense and not to an essential element of the crime charged, an objection was necessary to preserve this issue on appeal." (e.s.) (citation omitted).
The supreme court's holding in Sochor is diametrically opposed to that of Thomas, therefore Sochor governs, not Thomas. Thus, because the "missing" instruction went to Muteei's defense, and not to an essential element of the crimes charged, Muteei was required to request the self-defense instruction, and object to the instructions as given, in order to preserve the issue.
We think it supremely wise to hold fast to this rule. Muteei is attempting to obtain a reversal because of the absence of a jury instruction that, if given, would have made his acquittal even more difficult to attain. The "self-defense" jury instruction,[5] which is lengthy, has a beginning which is reminiscent of the justifiable homicide instruction. If the self-defense instruction is given the trial court must in all cases read the following language:[6]
"An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which (defendant) is charged if the [death of] [injury to] (victim) resulted from the justifiable use of force likely to cause death or great bodily harm."
Various examples of justifiable force then follow, the correct one to be selected by the trial court, according to the specific allegations of the defendant.
*629 The refrain changes, however. The trial court is subsequently required to read various provisions which are not as favorable to the defense. For example, included as mandatory reading in all cases is the language:[7]
"The fact that the defendant was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if by retreating he could have avoided the need to use that force. However, if the defendant was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat, then his use of force likely to cause death or great bodily harm was justifiable."
Under the facts of this case there is no doubt but that Muteei had several opportunities to "retreat" safely but did not do so. It would not take much thought by a defense attorney with a modicum of common sense to reject the idea of requesting the self-defense instruction under Muteei's circumstances.[8]
And how much happier for the defendant if his choice to reject the instruction automatically leads to reversal of his conviction. Such a result would be senseless. Accordingly, we find no "fundamental error"if, indeed, there was any error at allin the trial court's "failure" to give the self-defense jury instruction.
Affirmed.
NOTES
[1] From the marriage to Muteei.
[2] As given by the trial court these instructions were:

"An attempted killing that is excusable or was committed by the use of justifiable deadly force is lawful.
If you find that there was an attempted killing of Neville Blake by Abdullah Hakeem Muteei, you will then consider the circumstances surrounding the attempted killing in deciding if it was attempted first degree murder, or attempted second degree murder, or attempted voluntary manslaughter, or whether the attempted killing was excusable or resulted from justifiable use of deadly force.
The attempted killing of a human being is justifiable and lawful if necessarily done while resisting an attempt[][to] murder or commit a felony upon the Defendant, or to commit a felony in any dwelling house in which the Defendant was at the time of the killing.
The attempted killing of a human being is excusable and, therefore, lawful under any one of the three following circumstances: One, when the attempted killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any [un]lawful intent, or, two, when the attempted killing occurs by accident and misfortune in the heat of passion upon any sudden and sufficient provocation, or, three, when the attempted killing is committed by accident and misfortune resulting from a sudden combat, if a dangerous weapon is not used and the attempted killing is not done in a cruel and unusual manner."
T.453-54.
[3] Thomas was primarily bottomed on Motley v. State, 155 Fla. 545, 20 So.2d 798 (1945). Unlike Thomas, wherein the appropriate instruction was neither requested nor given, in Motley the instruction was given but was erroneous and misleading. The defense attorney's efforts at clarification were unsuccessful.
[4] Although not relied on by Muteei, Howard v. State, 561 So.2d 1362 (Fla. 3d DCA 1990), reiterates the Thomas conclusion that failure to give an instruction on a defense encompassed within the evidence is fundamental error, reviewable even in the absence of a specifically requested instruction or objection. We note that the reiteration, however, was not the holding of Howard as therein the defense instruction was requested, but not given, and the State conceded such was error. In other words, the issue of fundamental error was missing from Howard.
[5] Fla. Stand. Jury Instr. (Crim.) 40-43 ("Justifiable Use of Deadly Force").
[6] Id. at 40.
[7] Id. at 42.
[8] In fact, it would seem that the State would have the greater grievance over the absence of the instruction.