753 So.2d 1264 (2000)
Zackery HOLIDAY, Petitioner,
v.
STATE of Florida, Respondent.
No. SC95582.
Supreme Court of Florida.
February 24, 2000.
*1265 Nancy A. Daniels, Public Defender, and Michael A. Wasserman and Fred P. Bingham, II, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, Florida, for Respondent.
LEWIS, J.
We have for review Holiday v. State, 730 So.2d 830 (Fla. 1st DCA 1999), which certified conflict with Miller v. State, 723 So.2d 353 (Fla. 4th DCA 1998), as to whether the trial court committed fundamental error by instructing the jury with the then-current standard instruction on entrapment when such instruction had not yet been modifiedas it was later in Standard Jury Instructions In Criminal Cases (97-2), 723 So.2d 123, 123, 142-43 (Fla. 1998) (approving modified instruction for publication)to accurately reflect this Court's prior analysis of the entrapment defense in Munoz v. State, 629 So.2d 90 (Fla.1993). We have jurisdiction. See Art. V, § 3(b)(4), Fla. Const. As explained below, we approve the decision below and disapprove Miller.

I. FACTS AND PROCEDURAL HISTORY IN THE PRESENT CASE
The State of Florida (the State) charged Zachery Romero Holiday (Holiday) with sale or delivery of cocaine, with such offense occurring on June 14, 1997. Holiday's case proceeded to trial, which took place in October 1997. At trial, the State presented four witnesses in support of its case, and Holiday testified as the only witness for the defense.
The State's primary witnesses were two law enforcement officers who testified that on June 14, 1997, they were working undercover on a "buy/bust" drug-sting operation. While the officers were parked in an unmarked car in front of a food market, Holiday approached and inquired as to the reason for their presence. The officers responded that they were looking for crack cocaine. Neither officer promised to give Holiday any portion of the crack cocaine because it was contrary to policy to do so. Holiday offered assistance, walked over and spoke to a man standing nearby, and returned after being waived off. Holiday then entered the unmarked car and directed the officers to drive to a residential area.
After Holiday's source at this first location did not produce any crack cocaine, Holiday told the detectives that he would help them find crack from a different source. While at this second location, Holiday obtained $20 from the officers, disappeared for a few minutes, and returned to the back seat of the car, at which time he gave the officers a piece of crack cocaine. The "take down" signal was given to nearby law enforcement personnel, and Holiday was arrested immediately thereafter. The State established that (1) a crack pipe had been found on Holiday's person; and (2) the substance delivered by Holiday was cocaine.
At the close of the State's case, defense counsel requested the trial court to give the standard instruction on entrapment. The prosecutor responded that no evidence of entrapment had been presented and, until such evidence was presented, there could be no ruling as to whether the entrapment instruction should be given. The trial court agreed that no evidence of entrapment had been presented to that point but, if such evidence was presented, the court would entertain instructing the jury on an entrapment defense.
Subsequently, Holiday testified in his own defense. He was twenty-nine years old and had been addicted to crack for ten years. Further, Holiday had six prior felony convictions and one prior conviction for petit theft, with three of the felony convictions being for either sale or delivery *1266 of crack cocaine. As to the events that transpired on the day of his arrest, Holiday's testimony was generally consistent with the testimony of the officers, but it differed in several respects.
First, Holiday testified that prior to encountering the detectives, he had been using drugs at his stepfather's house. Second, he testified that when the officers asked about crack cocaine, Holiday said he would locate the substance if they would give him a piece of the drug. Holiday emphasized that he would not have entered the vehicle unless he had been promised a piece of crack from the purchase.
At the close of all the evidence, the trial court noted that the standard jury instruction on entrapment submitted by defense counsel was actually the instruction applicable to offenses that occurred prior to October 1, 1987, and indicated that it would instead give the then-current standard jury instruction on entrapment applicable in cases where the offense occurred on or after October 1, 1987. Defense counsel apologized for submitting the wrong instruction, and the prosecutor did not object to the plan. Later, during the charge conference, the trial court again indicated that it would give the standard instruction on entrapment applicable in cases where the offense at issue occurred on or after October 1, 1987, and neither defense counsel nor the prosecutor objected to the court giving that instruction. Accordingly, the trial court instructed the jury using the then-current standard jury instruction on entrapment, and the court shortly thereafter instructed the jury on the burdens of proof, with neither defense counsel nor the prosecutor objecting to the instructions as read. The jury returned a verdict finding Holiday guilty as charged; the trial court adjudicated him guilty and sentenced him as a habitual felony offender to fifteen years in prison. Holiday appealed.
On appeal, the First District analyzed whether the trial court had committed fundamental error by instructing the jury in accordance with the standard instruction on entrapment that was in effect at the time of Holiday's offense and trial. See Holiday, 730 So.2d at 830. The court first noted that this Court, in Standard Jury Instructions in Criminal Cases (97-2), 723 So.2d 123 (Fla.1998) (effective July 16, 1998), had modified the standard instruction on entrapment to make such instruction conform to this Court's analysis of the entrapment defense in Munoz. See Holiday, 730 So.2d at 830. The court also cited Vazquez v. State, 700 So.2d 5, 13 (Fla. 4th DCA 1997), review dismissed, 705 So.2d 902 (Fla.), cause dismissed, 718 So.2d 755 (Fla.1998), wherein the Fourth District found that before its recent modification, the standard instruction on entrapment did not "fairly and correctly present the current state of the law" on entrapment in light of this Court's decision in Munoz. See Holiday, 730 So.2d at 830. However, relying on this Court's decision in Sochor v. State, 619 So.2d 285, 290 (Fla.1993), the First District held, "Since the entrapment instruction pertains to a defense rather than to an essential element of the crime charged, no fundament error occurred." Holiday, 730 So.2d at 830. In so holding, the Holiday Court certified conflict with Miller. See id.

II. RECENT HISTORY OF THE STANDARD INSTRUCTION ON ENTRAPMENT IN FLORIDA
In October 1993, this Court issued its decision in Munoz. See 629 So.2d at 90. In that case, the Court analyzed Florida's entrapment statute, section 777.201, Florida Statutes, the current version[1] of which provides:

*1267 (1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(2) A person prosecuted for a crime shall be acquitted if the person proves by a preponderance of the evidence that his or her criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.
§ 777.201, Fla. Stat. (1999). After tracing the development of the entrapment defense under both federal and Florida law, see 629 So.2d at 91-98, this Court found that the Florida Legislature, by enacting section 777.201, had "codified the subjective test [of entrapment] delineated by the United States Supreme Court as the means for determining the application of that defense." Id. at 99. This Court then explained the various burdens of proof involved in the subjective test for entrapment delineated by the United States Supreme Court:
As indicated under the federal cases discussed above, the application of the subjective test is the test articulated by Judge Hand in [United States v.] Sherman[, 200 F.2d 880, 882-83 (2d Cir. 1952)], as further explained by the United States Supreme Court in [United States v.] Jacobson. Three principles arise under this test. The first two involve questions of fact and differing burdens of proof....
The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charged. On this issue, the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged; that is, whether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense. On this second question, according to our decision in Herrera, the defendant initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt.
Munoz, 629 So.2d at 99.
Almost five years after issuing Munoz, this Court approved for publication a modified version of the standard instruction on entrapment, with such modification being made to accurately reflect the burden of proof analysis set forth in Munoz. See Standard Jury Instructions, 723 So.2d at 123, 142-43 (effective July 16, 1998). Specifically, the Court approved for publication the following language:
On the issue of entrapment, the defendant must prove to you by the greater weight of the evidence that a law enforcement officer or agent induced or encouraged the crime charged. Greater weight of the evidence means that evidence which is more persuasive and convincing. If the defendant does so, the State must prove beyond a reasonable doubt that the defendant was predisposed to commit the (crime charged). The [S]tate must prove defendant's predisposition to commit the (crime charged) existed prior to and independent of the [i]nducement or encouragement.
Id. at 142-43. This instruction, as modified, is the current standard instruction on *1268 entrapment in Florida. See Fla. Std. Jury Instr. (Crim.) 3.04(c) at 43.[2]
Prior to its recent modification, however, the standard instruction on entrapment provided: "On the issue of entrapment, the defendant must prove to you by a preponderance of the evidence that his criminal conduct occurred as the result of entrapment." In re Standard Jury Instructions in Criminal Cases, 543 So.2d 1205, 1210 (Fla.1989). After Munoz was decided, several district courts considered the propriety of this pre-modified instruction and concluded that, considering Munoz, such instruction did not accurately reflect the current status of Florida law on entrapment. See, e.g., Vazquez, 700 So.2d at 13; Broker v. State, 726 So.2d 307, 307 (Fla. 2d DCA 1998). Recognizing the inaccuracy of the pre-modified standard instruction on entrapment, the First District in the decision below and the Fourth District in Miller proceeded to address whether, after Munoz, giving such instruction constituted fundamental error that could be reviewed for the first time on appeal. See Holiday, 730 So.2d at 830; Miller, 723 So.2d at 354-55. As stated above, the courts in Miller and Holiday reached different conclusions on this issue, see Miller, 723 So.2d at 354-55 (holding that trial court committed fundamental error by instructing the jury with the pre-modified standard instruction); Holiday, 730 So.2d at 830 (reaching opposite conclusion and certifying conflict with Miller), and we are now called upon to resolve the conflict between those decisions.

III. ANALYSIS OF THE CERTIFIED CONFLICT ISSUE
In the decision below, the First District relied on the decision of this Court in Sochor v. State, 619 So.2d 285, 290 (Fla. 1993), to hold that the trial court did not commit fundamental error by giving the pre-modified, but then-current, standard jury instruction on entrapment. See Holiday, 730 So.2d at 830. Sochor was a capital case in which the defendant argued, among other things, that the trial court committed fundamental error by failing to instruct the jury on voluntary intoxication as a defense to felony murder based on kidnapping. See 619 So.2d at 290. This Court determined that the trial court in Sochor's case had not committed fundamental error by failing to instruct the jury on that affirmative defense, reasoning as follows:
Fundamental error is error which goes to the foundation of the case. Sanford v. Rubin, 237 So.2d 134 (Fla.1970). Failure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error. Voluntary intoxication is a defense to, but not an essential element of, kidnapping. Therefore, the state did not have to disprove voluntary intoxication in order to convict Sochor of felony murder based on the underlying felony of kidnapping. Because the complained-of instruction went to Sochor's defense and not to an essential element of the crime charged, an objection was necessary to preserve this issue on appeal. Moreover, there was sufficient evidence of attempted sexual battery, a general-intent crime to which voluntary intoxication is not a defense, upon which to base a conviction of felony murder. Sochor's claim as to this point therefore fails.
Sochor, 619 So.2d at 290 (footnote omitted); see also Muteei v. State, 708 So.2d 626, 627-28 (Fla. 3d DCA) (relying on Sochor to find that the trial court did not commit fundamental error by failing to instruct the jury on self-defense), review denied, 718 So.2d 169 (Fla.1998).
*1269 After reviewing Sochor, we find that, while persuasive, such decision does not control the fundamental error question in this case. Specifically, unlike the situation in Sochor where the trial court did not instruct the jury on an affirmative defense, the trial court in both this case and in Miller actually instructed the jury in a manner that does not accurately reflect the burden of proof analysis on entrapment as set forth by this Court in Munoz. We believe this important distinguishing factor places the case before us under the analysis of our decision in Smith v. State, 521 So.2d 106 (Fla.1988). We find Smith controlling.
In Smith, this Court considered a certified question of great public importance: "Whether the jury instruction on insanity disapproved in Yohn v. State, 476 So.2d 123 (Fla.1985), is fundamental error requiring reversal in the absence of an objection?" 521 So.2d at 107. This Court answered the certified question in the negative and reasoned:
There was no constitutional infirmity in the old standard jury instruction because there is no denial of due process to place the burden of proof of insanity on the defendant. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The basis for the decision in Yohn was that under Florida law where there is evidence of insanity sufficient to present a reasonable doubt of sanity in the minds of the jurors, the presumption of sanity vanishes and the state must prove beyond a reasonable doubt that the defendant was sane. Holmes v. State, 374 So.2d 944 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980). The Court in Yohn felt that the standard jury instruction was not sufficiently clear on this subject. Since the defendant had requested an instruction which more adequately set forth Florida law, Yohn's conviction was reversed. There was no reference in Yohn to fundamental error in the giving of the standard jury instruction.
The doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application. Ray v. State, 403 So.2d 956 (Fla.1981). While we do not recede from our view in Yohn concerning the inadequacy of the old standard jury instruction on insanity, we cannot say that it was so flawed as to deprive defendants claiming the defense of insanity of a fair trial. Despite any shortcomings, the standard jury instructions, as a whole, made it quite clear that the burden of proof was on the state to prove all the elements of the crime beyond a reasonable doubt. As noted in State v. Lancia, 499 So.2d 11 (Fla. 5th DCA 1986), in which the court rejected a claim for post-conviction relief where the old standard jury instruction on insanity had been given without objection:
Different jurisdictions handle this defense in different ways, and whether the state or the defendant has the ultimate burden of proof on this issue, does not in either case make the trial fundamentally unfair.

Lancia, 499 So.2d at 12 (footnote omitted).
Smith, 521 So.2d at 107-08.
After reviewing Smith, it is clear that the situation in that case is substantially similar to the situation both here and in Miller. The standard instruction on insanity considered in Smith, as well as the standard instruction on entrapment at issue here and in Miller, failed to accurately explain the shifting burdens of proof involved in those affirmative defenses. Further, as with the insanity defense, see, e.g., Lancia, 499 So.2d at 12, the affirmative defense of entrapment receives various different treatments in other jurisdictions. See generally, e.g., Kenneth M. Lord, Entrapment and Due Process: Moving Toward a Dual System of Defenses, 25 Fla. *1270 St. U.L.Rev. 463, 464 (1998) (noting that the entrapment defense "has been adopted in one form or another in almost every jurisdiction in the United States"); Catherine A. Schultz, Victim or the Crime?: The Government's Burden in Proving Predisposition in Federal Entrapment Cases, 48 DePaul L.Rev. 949, 950 (1999) (noting that "[a]lmost every American jurisdiction recognizes some variation of the entrapment defense"). Finally, and most importantly, this Court found in Smith that "[t]here was no constitutional infirmity in the old standard instruction [on insanity] because there is no denial of due process to place the burden of proof of insanity on the defendant," 521 So.2d at 107; see also Yohn, 476 So.2d at 126 (noting the United States Supreme Court's holding in Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), that it is not unconstitutional to place the burden on a defendant to prove that he or she was insane at the time of the commission of the crime), much as this Court held in Herrera v. State, 594 So.2d 275 (Fla. 1992), that it is not unconstitutional to place the burden on a defendant to prove that he or she was entrapped. See id. at 278 (citing Patterson to support such holding); see also Brunetti v. State, 594 So.2d 291, 291 (Fla.1992); DeLeon v. State, 594 So.2d 286 (Fla.1992). Accordingly, based on the above, we hold that it was not fundamental error to give the pre-modified standard instruction on entrapment even though such instruction did not accurately reflect the burden of proof analysis set forth by this Court in Munoz.[3] In so holding, we approve the decision below and disapprove Miller.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
NOTES
[1] Since its creation in 1987, see chapter 87-243, section 42, at 1657, Laws of Florida, section 777.201 has been amended only once, and that was to replace gender-specific language with gender-neutral language. See ch. 97-102, § 1196, at 1424, Laws of Fla. Thus, the current version of section 777.201 is substantively the same as the version analyzed in Munoz.
[2] We reject the State's argument that we should recede from Munoz and change the standard instruction on entrapment, returning to the wording utilized prior to the amendment recently approved for publication in Standard Jury Instructions, 723 So.2d at 142-43.
[3] As an aside, we note that the entrapment defense in this case was tenuous at best and the facts do not present a compelling demand for relief. Taking Holiday's testimony as true, not only had he used drugs prior to encountering the officers, he was the one who suggested receiving a piece of any drug delivered to the officers. Further, Holiday had three prior felony convictions for sale or delivery of cocaine, which is the same offense at issue here. These facts weighed heavily in establishing Holiday's predisposition to commit the crime charged. See Munoz, 629 So.2d at 99 (finding that both conduct and prior criminal history of the accused may show that he or she was predisposed to commit the crime charged).