# Third District Court of Appeal

## State of Florida

Opinion filed November 14, 2018.

_____

No. 3D17-1054
Lower Tribunal No. 09-16074
_____

**Simon Silva,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Teresa Mary Pooler, Judge.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Jonathan Tanoos, Assistant Attorney General, for appellee.

Before SALTER, EMAS and LOGUE, JJ.

PER CURIAM.

On Motions for Clarification or Rehearing

Following the issuance of our opinion in this case on September 20, 2018, (1) the appellant, Mr. Silva, filed a motion for clarification, and (2) the appellee, State of Florida, filed a motion for rehearing or clarification. We directed each party to file a response to the other party's motion, and each provided a thoughtful and helpful memorandum. Upon consideration of the motions and responses, we withdraw our opinion of September 20, 2018, grant both parties' separate motions for clarification, deny the State's alternative motion for rehearing, and issue this opinion in the place and stead of the prior opinion.

I.

Simon Silva appeals his convictions for the second-degree murder of Samuel Forman and the attempted first-degree murder of Deborah Daoud. Silva argues that the trial court committed fundamental error by using a jury instruction that shifted the burden to Silva to prove Forman's alleged aggression beyond a reasonable doubt in order to establish the defense of self-defense. We reverse Silva's conviction as to the second-degree murder count, but affirm Silva's conviction and sentence on the count for the attempted first-degree murder of Daoud. Silva's counsel did not request a self-defense jury instruction regarding the attempted first-degree murder count, thus waiving any claim of error for failure to give such an instruction.

II.

Silva was charged with the first-degree murder of his employer and landlord, Forman; and the attempted first-degree murder of a neighbor, Daoud. The charges arose from the shooting of both Forman and Daoud following a confrontation between Silva and Forman. The parties' account of the confrontation differed: Silva claimed he reacted in self-defense, based on a prior threat by Forman and Forman's reach for a dark object in his pocket; while the State claimed Silva was the initial and primary aggressor. The undisputed evidence, however, demonstrated that Silva shot both Forman and Daoud, with Forman succumbing to his injuries.

At trial,[1] Silva claimed the shootings were in response to the aggressive demeanor and actions of Forman and Daoud. Silva resided in a trailer on, and worked at, Forman's junkyard. Silva claimed that Forman started a verbal altercation when Forman observed Silva's unauthorized use of electricity to power his trailer. The parties' confrontation escalated quickly. After a brief exchange of words, Forman allegedly stated "I'm going to shoot you" and reached into his front pocket. Silva testified that he observed Forman pull out a black object, which Silva believed to be a pistol. Silva claimed that this belief, and the accompanying fear, led to the shooting and killing of Forman.

---

[1] Silva's trial was his second trial due to this Court's decision in <u>Silva v. State</u>, 190 So. 3d 151 (Fla. 3d DCA 2016).

3

Following the initial shooting, Silva testified that Daoud grew visibly upset and threatened him. Silva claimed Daoud attempted to lunge and throw a microwave at him. Silva reacted to these actions by shooting Daoud, who survived the injuries and fled the scene. Following these events, Silva awaited the arrival of the police. Silva's explanation of the events was emphasized by defense counsel at the beginning of closing arguments, "This is a case of self-defense."

To discredit the self-defense claim, the State presented a differing account of the events. The State portrayed Silva as the initial aggressor and a disgruntled former employee and tenant. For example, the State presented Daoud, who testified that Silva was "aggressive" and "pulled the gun out of nowhere . . . [and] just shot [Forman] once." Thereafter, Daoud explained, "[Forman] was kneeling . . . with his hands up" and "[Silva] shot [Forman] again." The State claimed the evidence—including, for example, the testimony of Daoud—demonstrated that Silva shot two unarmed individuals who did not act in a manner to justify Silva's claim of self-defense.

After each side presented its case, the trial court engaged in a standard colloquy with Silva and his counsel regarding the jury instructions. The following exchange occurred:

> THE COURT: All right. So do we need to go over them again, just put it on the record in the presence of the defendant? Defense, had you made any objections to any of the substance of matters contained in the jury instructions?

4

[Silva's Counsel]: No, I have not, [y]our Honor, and I'm in agreement with them. And I've informed my client that I'm in agreement with them. . . . I believe he's in agreement with the -- with the instructions the way they're written right now.

. . .

THE COURT: All right. Mr. Silva, are you satisfied then with what your attorney is saying about him going over the jury instructions and finding them to be not objectionable, and you're in agreement with that?

DEFENDANT SILVA: Yes, [y]our Honor.

Following this exchange, the trial court instructed the jury on self-defense:

THE COURT: An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense which Simon Silva is charged if the death of Samuel Forman resulted from the justifiable use of deadly force.

Deadly force means force likely to cause death or great bodily harm. The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him or an attempt to commit an attempted first-degree premeditated murder upon him.

To find the defendant was justified in his use of deadly force to resist an attempted first-degree premeditated murder, you must find the following three elements <u>beyond a reasonable doubt</u>. Samuel Forman did some act intended to cause the death of Simon Silva that went -- went beyond just thinking or talking about it. Samuel Forman acted with a premeditated design to kill Simon Silva, the act would have resulted in the death of Simon Silva except that someone prevented Samuel Forman from killing Simon Silva or he failed to do so.

. . .

A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or the imminent commission

5

of an attempted first-degree premeditated murder against himself or another.

(Emphasis added). The written jury instructions included the same language:

> To find [SILVA] was justified in his use of deadly force to resist an Attempted First-Degree Premeditated Murder, you must find the following three elements beyond a reasonable doubt:
>
> 1. SAMUEL [FORMAN][2] did some act intended to cause the death of SIMON SILVA that went beyond just thinking or talking about it.
>
> 2. SAMUEL [FORMAN] acted with a premeditated design to kill SIMON SILVA.
>
> 3. The act would have resulted in the death of SIMON SILVA except that someone prevented SAMUEL [FORMAN] from killing SIMON SILVA or he failed to do so.

These instructions were repeated a total of three times. Silva's counsel did not object to the trial court's instructions; Silva concedes this point on appeal. No separate instruction on use of force and self-defense was requested or given among the instructions relating to the count for the first-degree attempted murder of Daoud.

Following the jury instructions, the case was submitted to the jury. The jury found Silva guilty of second-degree murder of Forman and attempted first-degree murder of Daoud. Silva was sentenced to life in prison. Silva's appeal followed.

---

[2]   The written jury instructions, verdict form, and investigative record identify Forman as "Foreman." We refer to Mr. Forman, the name provided in the information.

A.    Second-Degree Murder Conviction and Sentence (Forman)

The jury instruction regarding self-defense as to the second-degree murder of Forman was not the then-current standard instruction, and it was error to issue it.[3] The error was not preserved and is reviewed for fundamental error.  Wyche v. State, 170 So. 3d 898, 903 (Fla. 3d DCA 2015).

The responsibility to ensure that the jury is properly instructed ultimately rests with the trial court, not counsel.  While counsel may assemble and submit proposed instructions, the court may not delegate to counsel the court's non-delegable duty to assure that the jury is instructed on the correct law to be applied to the case.

Florida Rule of Criminal Procedure 3.985 provides that the trial court should generally give the standard jury instructions (found on the Florida Supreme Court's website).  If the trial court deviates from, or modifies, the standard jury instruction, it is required to state on the record or in a separate order the reasons for doing so.  Thus, while the standard jury instructions may be presumed to be correct, final responsibility for correctly instructing the jury remains with the trial

---

[3]  Between 2006 and 2007, the standard jury instruction inadvertently contained the inaccurate language putting the burden of proof on the defendant.  The instruction was amended to its present form in 2007 to correct the mistake; In re Standard Jury Instructions, 947 So. 2d 1159 (Fla. 2007).  The trial in the present case took place in 2017, ten years after the erroneous language was removed.

court.  State v. Hamilton, 660 So. 2d 1038, 1046 (Fla. 1995); Lozano v. State, 584 So. 2d 19, 24 (Fla. 3d DCA 1991).

In the present case, the erroneous instruction placed the burden upon Silva to prove his claim of self-defense on the charge of second-degree murder.  We hold that, under these circumstances, this burden-shifting instruction rose to the level of fundamental error, depriving Silva of a fair trial on the charge for which he relied upon his claim of self-defense.  Alexander v. State, 121 So. 3d 1185 (Fla. 1st DCA 2013); Montijo v. State, 61 So. 3d 424 (Fla. 5th DCA 2011).

As to Silva's claim of self-defense on the charge of second-degree murder for the shooting and death of Forman, the State makes two arguments: first, that defense counsel affirmatively agreed to the erroneous jury instruction, and second, that we should not address the point because of the concurrent sentence doctrine.

As to defense counsel's affirmative acceptance of the erroneous jury instruction, we are bound by this Court's holding in Philippe v. State, 795 So. 2d 173 (Fla. 3d DCA 2001).  Philippe holds that in order for defense counsel's agreement with a defective jury instruction to constitute a waiver, defense counsel must be aware of the defect "and affirmatively agree to it." Id. at 174.

In this case, there is no evidence in the record to demonstrate that defense counsel knew the wrong version of the standard jury instruction was under consideration. Defense counsel apparently thought he was agreeing to the then-

effective form of standard jury instruction on justifiable use of force, and there is no indication that counsel for the parties or the court knew otherwise.

The State urges us to reject the more stringent holding of Philippe regarding counsel's failure to object to a defective instruction, and to follow instead the more recent analysis of our sibling court in Knight v. State, 43 Fla. L. Weekly D404 (Fla. 1st DCA Feb. 19, 2018), review granted, No. SC18-309 (Fla. June 25, 2018).[4] In that case, the trial court used a jury instruction on attempted voluntary manslaughter by act that had been invalidated by the Florida Supreme Court several years earlier (in State v. Montgomery, 39 So. 3d 252 (Fla. 2010)), thereby committing fundamental error.

The First District concluded, however, that objections to the erroneous instruction were waived by counsel, noting among other factors "the existence of a plausible strategic reason for allowing the erroneous instruction to go to the jury." Knight, 43 Fla. L. Weekly at D407. That Court also addressed defense counsel's "active involvement in developing the jury instructions." Id. at D408. The First District certified a question of great public importance on the waiver issue,[5] and

_____

[4] To recede from Philippe, as urged by the State, this Court would be required to consider and determine the case en banc.

[5] The certified question is: IN ORDER FOR COUNSEL TO WAIVE AN ERROR IN A JURY INSTRUCTION THAT WOULD OTHERWISE BE FUNDAMENTAL, IS IT ONLY NECESSARY THAT COUNSEL AFFIRMATIVELY AGREE TO THE INSTRUCTION, OR IS IT ALSO NECESSARY FOR COUNSEL TO AFFIRMATIVELY AGREE TO THE

9

the Florida Supreme Court has now accepted jurisdiction.  <u>Knight v. State</u>, No. SC18-309 (Fla. June 25, 2018).

As to the State's invocation of the concurrent sentence doctrine, the State relies on <u>Jordan v. State</u>, 143 So. 3d 335, 338 (Fla. 2014) ("in the case of multiple concurrent sentences, an appellate court need not address challenges to every conviction where another conviction with a concurrent sentence of equal or greater length has been affirmed on appeal." (citing <u>Hirabayashi v. United States</u>, 320 U.S. 81, 85 (1943)).  More recently, this Court applied the doctrine in <u>Green v. State</u>, 224 So. 3d 252, 256 (Fla. 3d DCA 2017) (life sentence for kidnapping and sexual battery charges did not amount to fundamental error because the defendant was serving a concurrent life sentence for an armed robbery conviction).

We reject the State's extension of the doctrine to the present case, however, in this direct appeal.  <u>See</u> <u>Camellon v. State</u>, 178 So. 3d 910, 911 n.3 (Fla. 3d DCA 2015).

Based on these authorities, the concededly erroneous jury instruction on justifiable use of force in the second-degree murder case, and the fundamental error inherent in giving that instruction, we reverse Silva's conviction and sentence

PORTION OF THE INSTRUCTION THAT IS ERROR AND/OR TO BE AWARE THAT THE INSTRUCTION IS ERRONEOUS?  <u>Knight</u>, 43 Fla. L. Weekly at D409.

10

on the second-degree murder count. We remand the case to the trial court for a new trial on that count.

B. Attempted First-Degree Murder Conviction and Sentence (Daoud)

As to the charge of attempted first-degree murder of Daoud, Silva failed to request a jury instruction on self-defense, and no self-defense instruction (proper or erroneous) was given to the jury on this count. After the instructions were read to the jury, Silva failed to raise any objection to the instructions as given. These failures are fatal to Silva's claim, as the issue was not preserved and is not fundamental error. See Muteei v. State, 708 So. 2d 626 (Fla. 3d DCA 1998); Goode v. State, 856 So. 2d 1101 (Fla. 1st DCA 2003). See also Holiday v. State, 753 So. 2d 1264 (Fla. 2000).

The evidence at trial regarding Silva's allegedly justifiable use of force against the neighbor/victim, Daoud, was scant. Consistent with that paucity of evidence, the erroneous jury instruction approved and read to the jury on the second-degree murder count was not included with the instructions pertaining to the attempted first-degree murder count. The self-defense instructions read to the jury mentioned only Forman's name and did not refer to Daoud. Three separate times the instruction stated that self-defense required a demonstration that "Samuel Forman acted with a premeditated design to kill Simon Silva."

11

It is undisputed that Silva used deadly force in his initial interaction with Forman, his landlord, before Silva turned his attention to Daoud. Silva testified that Forman's employees had told him that Forman carried a gun; that Forman pulled a black object from his right pocket; and that Forman said "I'm going to shoot you."

As to Daoud, however, there was no such testimony or evidence. Silva himself said that Daoud's approach was after Silva had shot Forman. His testimony that he feared Daoud was going to "throw the microwave at [him]," was undercut by crime scene photographs showing the microwave, and by Silva's own testimony that he placed his firearm on the microwave as he called 911 to report the shootings. In Silva's initial statement regarding the shootings, Silva did not think that he had shot anyone other than Forman. He told police in that initial interview that he had reported to 911 that "he had shot his boss," which could only be a reference to Forman (Daoud was only a neighbor, not Silva's employer or landlord).

Regarding Silva's prior interactions with Forman, Silva testified that Forman had previously threatened to shoot him. Silva said that he had not reported the prior threat to the police, because Forman was a lawyer and a millionaire, and "All the police around there, they know him." Silva never mentioned any such threat, concern, or interaction regarding Daoud. So the defense's failure to request

or include a separate instruction relating to a claim of justifiable use of force against Daoud may have been intentional.

Silva's argument that the erroneous instruction regarding the second-degree murder count may have infected the jury's consideration of the attempted first-degree murder count involving Daoud is unavailing. The complete omission of Daoud's name from the self-defense instruction given as to the second-degree murder charge and Forman distinguishes the present case from the fundamental errors involved in cases such as Alexander and Montijo, cited above and by Silva.

Nor is Silva's back-up argument, a claim of ineffective assistance of counsel "apparent on the face of the record," citing McMullen v. State, 876 So. 2d 589, 590 (Fla. 5th DCA 2004), persuasive. First, McMullen itself affirmed the defendant's conviction and sentence, confirming that "normally" (and in McMullen's case) ineffective assistance of trial counsel claims are not cognizable on direct appeal. Id. Second, this Court has declined to find ineffective assistance of trial counsel when such a claim is raised on direct appeal and prejudice is not obvious, but debatable, and thus cognizable only on a motion for post-conviction relief. Corvo v. State, 916 So. 2d 44, 46 (Fla. 3d DCA 2005).

For these reasons we affirm Silva's conviction on the attempted first-degree murder count.

IV.

13

As to the second-degree murder conviction and sentence, and Silva's claim regarding the erroneous jury instruction on justifiable use of force and Forman, we reverse and remand the case for a new trial. In doing so, we specifically confirm our reliance on this Court's decision in <u>Philippe</u> regarding the claim of waiver by counsel and the erroneous jury instruction at issue here. We conclude that <u>Philippe</u> conflicts with the First District's analysis in <u>Knight</u> and could be affected by the Florida Supreme Court's resolution of the question certified by the First District in that case.

As to the attempted first-degree count and Daoud, we affirm Silva's conviction and sentence without prejudice for him to move for post-conviction relief on his claim of ineffective assistance of counsel. In doing so, we express no opinion regarding the merit or lack of merit respecting any such motion.