933 So.2d 1155 (2006)
Eric MARTINEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-1521.
District Court of Appeal of Florida, Third District.
May 10, 2006.
Rehearing and Rehearing Denied July 5, 2006.
*1157 Bennett H. Brummer, Public Defender, and Robert Godfrey, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.
Before GREEN, CORTIÑAS, and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied July 5, 2006.
ROTHENBERG, Judge.
The sole issue raised in this appeal is whether the self-defense or justifiable use of deadly force instruction provided to the jury constitutes reversible error. The information charges the defendant with committing an attempted first degree premeditated murder upon his girlfriend, Ms. Rijo, and in the course of committing the attempted premeditated murder upon her, committing an aggravated battery with a deadly weapon. In charging the jury on the laws applicable to the case, the trial court included an instruction on Justifiable Use of Deadly Force, as set forth in the Florida Standard Jury Instruction (Criminal) 3.6(f). While the defendant did not object below, he now objects to a portion of the instruction given, and seeks reversal of his conviction on that basis. The section in question may be given when there is evidence that the defendant may have been the initial aggressor, and appears as follows in the Standard Jury Instructions:
Aggressor § 776.041, Fla. Stat.
However, the use of force likely to cause death or great bodily harm is not justifiable if you find:
Give if applicable
1. (Defendant) was attempting to commit, committing, or escaping after the commission of (applicable forcible felony); or
Define applicable forcible felony. Define after paragraph 2 if both paragraphs 1 and 2 are given.
2. (Defendant) initially provoked the use of force against [himself] [herself], unless:
a. The force asserted toward the defendant was so great that [he][she] reasonably believed that [he][she] was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger, other than using force likely to cause death or great bodily harm to (assailant).
b. In good faith, the defendant withdrew from physical contact with (assailant) and indicated clearly to (assailant) that [he][she] wanted to withdraw and stop the use of force likely to cause death or great bodily harm, but (assailant) continued or resumed the use of force.
In reading this portion of the instruction, the trial court inserted the offenses of attempted murder and/or aggravated battery as the applicable forcible felonies. Therefore, the instruction that was given reads as follows:
However, the use of force likely to cause death or great bodily harm is not justifiable if you find:
1. Eric Martinez was attempting to commit, committing, or escaping after the commission of an Attempted Murder and/or an Aggravated Battery. . . .
We agree that to give this instruction absent an independent forcible felony is error. Giles v. State, 831 So.2d 1263 (Fla. 4th DCA 2002). See also Carter v. *1158 State, 889 So.2d 937 (Fla. 5th DCA 2004), review denied, 903 So.2d 190 (Fla.2005); Cleveland v. State, 887 So.2d 362 (Fla. 5th DCA 2004); Hernandez v. State, 884 So.2d 281 (Fla. 2d DCA 2004); Dunnaway v. State, 883 So.2d 876 (Fla. 4th DCA), review denied, 891 So.2d 553 (Fla.2004); Hickson v. State, 873 So.2d 474 (Fla. 4th DCA 2004); Barnes v. State, 868 So.2d 606 (Fla. 1st DCA 2004); Fair v. Crosby, 858 So.2d 1103 (Fla. 4th DCA 2003); Estevez v. Crosby, 858 So.2d 376 (Fla. 4th DCA 2003).
The issue we must resolve, however, is whether the error constitutes fundamental error, which if not considered, would result in a miscarriage of justice. After a careful review of the complete record, we conclude that the error was not fundamental error and, therefore, affirm.
The Florida Supreme Court has consistently held that jury instructions are subject to the contemporaneous objection rule. See Archer v. State, 673 So.2d 17 (Fla.), cert. denied, 519 U.S. 876, 117 S.Ct. 197, 136 L.Ed.2d 134 (1996); Armstrong v. State, 642 So.2d 730 (Fla.1994), cert. denied, 514 U.S. 1085, 115 S.Ct. 1799, 131 L.Ed.2d 726 (1995); Parker v. State, 641 So.2d 369 (Fla.1994), cert. denied, 513 U.S. 1131, 115 S.Ct. 944, 130 L.Ed.2d 888 (1995). Absent an objection at trial, the complained-of instruction may be raised on appeal only if fundamental error has occurred. See Sochor v. State, 619 So.2d 285 (Fla.), cert. denied, 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993); White v. State, 446 So.2d 1031 (Fla.1984).
In the instant case, the defendant and his attorney did not object to the instruction as read. In fact, the defendant's attorney affirmatively agreed to the specific wording of the instruction given. As the defendant did not object to the instruction, and in fact affirmatively agreed to it, the claimed error was not preserved for appeal and, therefore, not reversible error unless we conclude that it was fundamental error.
The defendant argues that the instruction given, constitutes fundamental error because it "negated his only defense of self-defense." Interestingly, while this was the defendant's argument and position on appeal, that the error was fundamental error because it negated his sole defense of self-defense, the dissent appears to have overlooked that this was the defendant's argument, and overlooks the fact that self-defense was not the defendant's sole defense, a distinction we find extremely relevant in our determination that the instructional error did not constitute fundamental error. In fact, were we to conclude that the erroneous instruction had "negated his only defense of self-defense" we most likely would have agreed that fundamental error occurred. A careful review of the entire record, however, reflects that self-defense was not the defendant's sole defense, it was not even his primary defense, this defense was unsupported by the evidence, and self-defense was all but abandoned by the defendant's attorney in closing argument.

WHAT IS FUNDAMENTAL ERROR?
Fundamental error is error which "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)(quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)). See also Archer, 673 So.2d at 20. "Thus, for error to meet this standard, it must follow that the error prejudiced the defendant. Therefore, all fundamental error is harmful error." Reed v. State, 837 So.2d 366, 370 (Fla.2002). Fundamental error is an error that would result in a miscarriage of justice if not considered, Am. Sur. Co. of N.Y. v. Coblentz, 381 F.2d 185 (5th Cir.1967), and is of such a nature that it essentially amounts to a denial of due process. Hooters *1159 of Am., Inc. v. Carolina Wings, Inc., 655 So.2d 1231 (Fla. 1st DCA 1995). Fundamental error, therefore, refers to error that goes to the very heart of the judicial process, not to mistakes as to which arguably correct law or rule applies, or as to the application of such a rule of law to the facts in a case. Fleischer v. Fleischer, 586 So.2d 1253 (Fla. 4th DCA 1991). Thus, fundamental error occurs if the error extinguishes a party's right to a fair trial. Hooters.

DO ERRORS IN JURY INSTRUCTIONS NECESSARILY CONSTITUTE FUNDAMENTAL ERROR?
The Florida Supreme Court has consistently answered this question in the negative:
This Court recently reiterated longstanding principles concerning preservation of instructional error:
Instructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred. To justify not imposing the contemporaneous objection rule, the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. In other words, fundamental error occurs only when the omission is pertinent or material to what the jury must consider to convict.

Cardenas v. State, 867 So.2d 384, 390-91 (Fla.2004)(quoting Reed v. State, 837 So.2d 366, 370 (Fla.2002)(quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991) (citations and quotation marks omitted)(emphasis added))).
The dissent, however, appears to disagree with this long-standing principle, as well as with the wealth of law on the subject, and seeks for this court to apply a per se reversible error standard whenever an unobjected-to instruction is given regarding a defense at trial. This position is not only contrary to the law, but, in this case, is all the more glaringly an improper application of the fundamental error analysis where the instruction was agreed to by trial counsel, and self-defense was not the defendant's sole defense, not his primary defense, and was only half-heartedly argued by his lawyer at trial.

THE DISTINCTION BETWEEN ERRORS RELATING TO THE CRIME CHARGED AND THOSE WHICH RELATE TO A DEFENSE
A review of the cases decided by the Florida Supreme Court reflects that there is a distinction between jury instruction errors which relate to a crime charged and those which relate to a defense raised at trial.
In Sochor v. State, 619 So.2d 285 (Fla.), cert. denied, 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993), the Florida Supreme Court upheld a sentence of death, despite the trial court's failure to instruct the jury on voluntary intoxication as a defense to felony murder based upon the underlying felony of kidnapping, a specific intent crime. Sochor's attorney, as in the instant case, failed to object or to request an alternative instruction. The defendant urged that because this was a capital murder prosecution, requiring "heightened" scrutiny, the contemporaneous objection requirement should carry less weight. See Swafford v. State, 679 So.2d 736, 740 (Fla.1996)(noting that our jurisprudence embraces the concept that "death is different" and affords heightened scrutiny to capital proceedings). The Court rejected this notion and performed the longstanding fundamental error analysis requiring that the error must be such that it actually reaches into the foundation of the case. *1160 Sochor, 619 So.2d at 289-90. In determining that it did not, and thus did not constitute fundamental error, the Court found that:
Failure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error. Voluntary intoxication is a defense to, but not an essential element of, kidnapping. Therefore, the state did not have to disprove voluntary intoxication in order to convict Sochor of felony murder based on the underlying felony of kidnapping. Because the complained-of instruction went to Sochor's defense and not to an essential element of the crime charged, an objection was necessary to preserve this issue on appeal.
Sochor, 619 So.2d at 290 (emphasis added).
Thus in Sochor, the Florida Supreme Court found that the failure to give an instruction that "went to Sochor's defense" and not to an "essential element of the crime charged," did not constitute fundamental error. Id.
Likewise, in Archer, cited to earlier in this opinion, the Florida Supreme Court upheld the conviction and sentence of death in another capital case, despite the trial court's failure to instruct the jury on the law regarding "principals" and the definition of reasonable doubt, noting that "Archer did not object to the instructions at trial and thus they are not preserved for appeal," and that, after reviewing the record, the claimed errors did not constitute fundamental error. Archer, 673 So.2d at 20-21.
In Cardenas v. State, 867 So.2d 384 (Fla. 2004), the Florida Supreme Court also concluded that the erroneous instruction on the presumption of impairment was not fundamental error. Cardenas involved consolidated appeals resulting from the defendant's conviction of DUI manslaughter in Citrus County and his convictions for various offenses in Escambia County, including vessel homicide, two counts of boating under the influence, manslaughter, and culpable negligence. The Florida Supreme Court heard the case based upon conflicts between the First, Second, and Fifth District Courts of Appeal, regarding the giving of a jury instruction on the presumption of impairment in violation of the Florida Supreme Court's decision in State v. Miles, 775 So.2d 950 (Fla.2000), which held that a trial court should not instruct the jury on the presumption of impairment when the State presents blood-alcohol evidence that it obtained without complying with the quality assurance requirements of the implied consent law. Cardenas, 867 So.2d at 387 (citing Miles, 775 So.2d at 956-57). The First District in Cardenas v. State, 816 So.2d 724 (Fla. 1st DCA 2002), found the error was not preserved for appeal and did not constitute fundamental error; the Fifth District in Bonine v. State, 811 So.2d 863 (Fla. 5th DCA 2002), sitting en banc, found the error to be harmful per se; and the Second District in McBride v. State, 816 So.2d 656 (Fla. 2d DCA 2002), held that it constituted harmless error. The Florida Supreme Court's decision, quashing Bonine, and finding that the instructional error was neither per se harmful error, nor fundamental error, and that when preserved, the error should be assessed under a harmless error analysis, is not all that material to our evaluation of the instant instructional error. The Court's analysis, however, is.
The analysis began with the Court's recognition of its "longstanding principles" when evaluating instructional errors, that an objection is required to preserve an instructional error unless the error is fundamental error, and that fundamental error occurs when "the omission is pertinent or material to what the jury must consider in order to convict." Cardenas, 867 So.2d *1161 at 390-91 (citing Reed v. State, 837 So.2d 366, 370 (Fla.2002))(quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)) (citations and quotation marks omitted). By way of example, the Court referred to Reed, wherein the trial court incorrectly defined an essential element of a charged crime. The Court concluded that the error was fundamental as it "reache[d] into the validity of the trial itself such that a guilty verdict `could not have been obtained without the assistance of the error.'" Cardenas, 867 So.2d at 391 (quoting Reed, 837 So.2d at 370). While the Court recognized, as did the First District, that "an improper instruction or failure to instruct as to an essential element of a crime may rise to the level of fundamental error," Cardenas, 867 So.2d at 392 (citing to the First District's finding in Cardenas, 816 So.2d at 727), it concluded this was not the case in Cardenas. The Court, thus, proceeded with a "fairness analysis" in order to determine whether the error influenced the outcome of the trial such that the guilty verdict could not have been obtained without the improper instruction. It concluded that it did not and, therefore, found that no fundamental error had occurred.
In performing its analysis in Cardenas, the Florida Supreme Court noted and agreed with the First District's analysis:
The First District analogized the improper instruction on the statutory presumption to erroneous instructions on affirmative defenses. The court observed that in Holiday v. State, 753 So.2d 1264, 1269-70 (Fla.2000), and Smith v. State, 521 So.2d 106, 108 (Fla. 1988), this Court held that instructions improperly shifting the burden of proof on the affirmative defenses of entrapment and insanity did not violate due process, and thus were not fundamental error. See Cardenas, 816 So.2d at 727.
. . .
We agree with the conclusion of the First District that the improper instruction on the presumption of impairment neither omitted nor misdefined an essential element of the crime. Cf. Sochor v. State, 619 So.2d 285, 290 (Fla.1993)(finding that failure to give instruction on voluntary intoxication did not constitute fundamental error because voluntary intoxication was a defense to, but not an essential element of, the charged crime). This situation is different from cases such as Reed [v. State, 837 So.2d 366 (Fla.2002)], in which the trial court incorrectly defined malice, an essential element of the crime of aggravated child abuse. See 837 So.2d at 370.
Cardenas v. State, 867 So.2d at 392-93.
Thus, in Cardenas and Sochor, the Florida Supreme Court actually noted that instructional errors regarding an affirmative defense must be treated differently than errors regarding an essential element of a crime charged.
A very different result was reached in Reed v. State, 837 So.2d 366 (Fla.2002), where the instructional error involved an essential element of the crime charged. In Reed, the Florida Supreme Court concluded that it was fundamental error to incorrectly define malice when instructing the jury as to the crime of aggravated child abuse. The Court concluded that since the element of malice was an essential element of the crime charged, the element of malice was a disputed issue at trial, and the instruction reduced the State's burden of proof as to this essential element, the inaccurate instruction constituted fundamental error. See also Palazzolo v. State, 754 So.2d 731 (Fla. 2d DCA 2000)(instruction regarding essential element of sexual battery was fundamental error where instruction was erroneous and where there were misleading comments *1162 made during trial); Dowling v. State, 723 So.2d 307 (Fla. 4th DCA 1998)(failure to give a complete or accurate instruction for the offense of false imprisonment constitutes fundamental error as it relates to an element of the charged offense).

FAILURE TO INSTRUCT ON A DEFENSE VS. PROVIDING A FAULTY DEFENSE INSTRUCTION
The Florida Supreme Court has not only recognized a distinction between instructional errors relating to an essential element of the crime charged, and those which relate to an affirmative defense, it has also found a distinction between those situations in which the trial court fails to instruct the jury on an affirmative defense, and those in which a faulty defense instruction is given. When no objection was raised below, in order to determine if fundamental error occurred when a faulty defense instruction is given, the court looks to whether the faulty instruction denied the defendant his right to a fair trial.
In Smith v. State, 521 So.2d 106 (Fla. 1988), the issue was whether the faulty instruction given without objection, regarding the defendant's affirmative defense of insanity, constituted fundamental error. The Court concluded that it did not, as it was not constitutionally infirm and did not deny the defendant his right to a fair trial.
Likewise, in Holiday v. State, 753 So.2d 1264 (Fla.2000), the instruction given regarding the defendant's entrapment defense was also faulty. The Court noted that "[t]he doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." Holiday, 753 So.2d at 1269 (citing Ray v. State, 403 So.2d 956 (Fla.1981)). In reliance upon Smith, the Florida Supreme Court concluded that, because the faulty instruction was not constitutionally infirm, it did not deny the defendant due process, i.e., his right to a fair trial, and, therefore, was not fundamental error.

UNDER CERTAIN CIRCUMSTANCES THE COMPLAINED-OF INSTRUCTION CAN CONSTITUTE FUNDAMENTAL ERROR
The dissent completely misreads the majority opinion in stating that "the majority claims that the Florida Supreme Court applies fundamental error only to cases where the error goes to an instruction on an element of the charged crime, not to a defense instruction." The majority makes no such claim. We acknowledge that an erroneous instruction regarding an affirmative defense can, under certain circumstances, constitute fundamental error. Additionally, we acknowledge that the giving of the aggressor portion of the self-defense instruction absent an independent forcible felony, can result in fundamental error. Where we disagree with the dissent is that we do not conclude that absent a contemporaneous objection, the instruction given automatically requires a finding that fundamental error has occurred. As will be discussed in depth later in this opinion, such a per se application of the fundamental error analysis has been resoundingly rejected. We have, instead, applied the longstanding principles followed in this state, which require an examination of the record in order to determine if the error was fundamental in this particular case. See Ortiz v. State, 905 So.2d 1016 (Fla. 2d DCA 2005); Fair v. State, 902 So.2d 965 (Fla. 4th DCA 2005); York v. State, 891 So.2d 569 (Fla. 2d DCA 2004); Davis v. State, 886 So.2d 332 (Fla. 5th DCA 2004), review denied, 898 So.2d 81 (Fla.2005); Hernandez v. State, 884 So.2d 281 (Fla. 2d DCA 2004); Baker v. State, 877 So.2d *1163 856 (Fla. 2d DCA 2004); Hickson v. State, 873 So.2d 474 (Fla. 4th DCA 2004); Estevez v. Crosby, 858 So.2d 376 (Fla. 4th DCA 2003). All of these cases involve the exact same issue as in this appeal. Each was initially affirmed on direct appeal and was before their respective appellate courts for either rehearing or postconviction relief alleging ineffective assistance of appellate counsel for failing to raise the instructional error on direct appeal. In each case (except Hernandez, which will be discussed in more detail), the appellate court found that appellate counsel should have raised the issue on direct appeal, and granted the defendant a belated appeal regarding the issue. Despite the cases already decided in those districts in which the giving of this instruction was found to constitute fundamental error, the appellate courts did not automatically conclude that fundamental error was committed in the case before it, simply because it had been given (as the dissent suggests the case law requires). Rather, the district courts consistently have recognized that a review of the full record was required before such a determination could be made: "The fundamental nature of the error can be gleaned only from a review of the full record on appeal." Baker, 877 So.2d at 858. "A determination as to whether the justifiable use of deadly force instruction constituted fundamental error requires a full review of the record on appeal." Ortiz, 905 So.2d at 1017. See also Fair; York; Davis; Hernandez; Hickson; Estevez. Hernandez was the only case in which a belated appeal was not granted on the issue, as the record was already before the court. The appellate court's review of the record in Hernandez, however, revealed that defense counsel "strenuously objected" below. Because the objection was preserved, the appellate court conducted a harmless error analysis, not a fundamental error analysis, as the dissent suggests.
We also note that, during the protracted pendency of this appeal, the Fifth District Court sat en banc in Sloss v. State, 925 So.2d 419 (Fla. 5th DCA 2006), and certified the following question, as one of great public importance, to the Florida Supreme Court: "DOES FUNDAMENTAL ERROR OCCUR WHEN AN ERRONEOUS JURY INSTRUCTION RELATES ONLY TO AN AFFIRMATIVE DEFENSE AND NOT TO AN ESSENTIAL ELEMENT OF THE CRIME?" While there appears to be a split in the Fifth District as to whether an erroneous jury instruction which relates to an affirmative defense can ever rise to the level of fundamental error, we believe that under certain circumstances, it can. We also believe that the certified question, as posed, is fundamentally flawed. The question should properly be stated as "Can fundamental error occur . . .," not "Does fundamental error occur . . ." because the Florida Supreme Court has consistently held that the determination of whether fundamental error has occurred requires a full review of the record.

APPELLATE COURTS HAVE FOUND THAT FUNDAMENTAL ERROR OCCURS WHEN THE FAULTY INSTRUCTION NEGATES A DEFENDANT'S SOLE DEFENSE
The District Courts, including this court, have found that fundamental error occurs when a faulty instruction negates a defendant's sole defense. In Carter v. State, 469 So.2d 194 (Fla. 2d DCA 1985), the Second District Court of Appeal reversed a manslaughter conviction after finding that a portion of the self-defense instruction given by the trial court (regarding the duty to retreat) was erroneous as a matter of law and inherently misleading. While *1164 no contemporaneous objection was made, the District Court concluded that fundamental error occurred because the instruction negated the defendant's sole defense to the homicide. "[W]here, as here, a trial judge gives an instruction that is an incorrect statement of the law and necessarily misleading to the jury, and the effect of that instruction is to negate the defendant's only defense, it is fundamental error. . . ." Carter, 469 So.2d at 194, 196 (Fla. 2d DCA 1985)(emphasis added).
In Davis v. State, 804 So.2d 400 (Fla. 4th DCA 2001), the defendant appealed his convictions for trafficking in cocaine based upon an unobjected-to error in the jury instructions which could have misled the jury regarding the elements of the crimes charged and the defendant's sole defense as to those crimes. The Fourth District Court of Appeal concluded that since the defendant's defense was entrapment, he by necessity admitted to committing the offenses. Thus, the error in the instruction as it related to the charged offenses did not constitute fundamental error. When examining the erroneous instruction to the defendant's entrapment defense, the court concluded that the error was fundamental error, as entrapment was the defendant's sole defense.
The first case we have found in which the giving of the self-defense instruction absent an independent forcible felony was found to be error, was in Judge Schwartz's dissent in McGahee v. State, 600 So.2d 9 (Fla. 3d DCA 1992). While the majority concluded that no reversible error had occurred, Judge Schwartz, in his dissent, opined that giving this portion of the self-defense instruction, in the absence of an independent forcible felony, was reversible error because defense counsel objected and the error deprived the defendant of his sole defense at trial.
Ten years after Judge Schwartz's dissent in McGahee, the Fourth District reversed a conviction in which this same instruction was given. Giles v. State, 831 So.2d 1263 (Fla. 4th DCA 2002). In Giles, which has since become the leading case regarding the specific instruction complained of herein, the Fourth District concluded that it was error to instruct the jury on the forcible felony portion of the self-defense instruction absent an independent forcible felony being charged against the defendant. The Fourth District concluded, as did Judge Schwartz in his dissenting opinion in McGahee ten years earlier, that this instruction, absent an independent forcible felony, was confusing. Unlike the case we have before us in which no objection was raised below, the defendant in Giles did object to the instruction given. Thus, the Giles court performed a harmless error analysis, which involves a substantially different burden, and concluded that it was reversible error to give an instruction which was misleading and confusing and, in effect, negated the defendant's sole defense to the crime charged. It is important to note that the Giles court did not perform a fundamental error analysis and did not determine that fundamental error occurred. Instead, after performing the harmless error analysis articulated in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), it concluded that the error was not harmless.
The following year, in Rich v. State, 858 So.2d 1210 (Fla. 4th DCA 2003), the Fourth District also concluded that the trial court committed fundamental error when it gave the same instruction. In reaching this conclusion, the Fourth District relied on this court's holding in Thomas v. State, 831 So.2d 253 (Fla. 3d DCA 2002), regarding a different portion of the self-defense instruction. In Thomas, we held that, "An incorrect jury instruction *1165 on the defense of justifiable use of deadly and non-deadly force constitutes fundamental error if there is a reasonable possibility that the instruction may have led to the conviction." Thomas, at 253.[1] The Fourth District noted that the circumstances in Rich were similar to those in Giles (in Giles, self-defense was his sole defense), and "that fundamental error results where an inaccurate and misleading instruction negates a defendant's only defense." Rich, 858 So.2d at 1211 (citing Davis v. State, 804 So.2d 400, 404 (Fla. 4th DCA 2001)).
The following cases decided since Giles and Rich, listed in the order in which they were decided, all concluded that either fundamental or reversible error was committed when the instant instruction operated to negate the defendant's sole defense: Barnes v. State, 868 So.2d 606, 607-08 (Fla. 1st DCA 2004)(instruction given over defense objection not harmless error when the effect of the instruction negated the defendant's only defense); Zuniga v. State, 869 So.2d 1239, 1240 (Fla. 2d DCA 2004)(fundamental error when the only disputed issue at trial was whether Zuniga acted in self-defense); Dunnaway v. State, 883 So.2d 876, 877-79 (Fla. 4th DCA 2004)(fundamental error where appellant's defense to the charge was that he acted in self-defense; "fundamental error results where an inaccurate and misleading instruction negated a defendant's only defense"); Williams v. State, 901 So.2d 899, 900 (Fla. 4th DCA 2005)("Williams's defense was that he hit the victim in self-defense."); Hardy v. State, 901 So.2d 985, 986 (Fla. 4th DCA 2005)(defendant was charged with aggravated battery and his sole defense was self-defense); Hawk v. State, 902 So.2d 331 (Fla. 5th DCA 2005); Bevan v. State, 908 So.2d 524, 525 (Fla. 2d DCA 2005)("At trial, Mr. Bevan argued that the battery never occurred, and his sole defense to the aggravated assault and criminal mischief charges was self-defense."); Moore v. State, 30 Fla. L. Weekly D1657, 2005 WL 1554597 (Fla. 2d DCA July 6, 2005)("Error of this type has been determined to be fundamental error, and courts have reversed even without an objection by the defense. `Fundamental error exists where an inaccurate and misleading instruction negates the defendant's only defense.'") (quoting Carter v. State, 889 So.2d 937, 939 (Fla. 5th DCA 2004); Sloss v. State, 30 Fla. L. Weekly D2328, 2005 WL 2396309 (Fla. 5th DCA Sept.30, 2005))("When the defendant admits the stabbing but argues solely self-defense, an instruction negating that defense creates a reasonable possibility that the instruction led to the conviction."); Sloss v. State, 923 So.2d 572 (Fla. 5th DCA 2006)(en banc; certified question). Upon rehearing, the Second District in Moore withdrew its original opinion and concluded that the error was not fundamental error, as the defense timely objected below. After applying a harmless error analysis, it concluded that the giving of the instruction was reversible error. Moore v. State, 912 So.2d 1252 (Fla. 2d DCA 2005).
Recently, this court in Grier v. State, 928 So.2d 368 (Fla. 3d DCA 2006), likewise concluded that fundamental error occurred when this erroneous instruction was given. Before reaching that conclusion, however, this court performed a fundamental error analysis and concluded that the error was fundamental because it negated Grier's sole defense.
What these decisions reflect is that the appellate courts have applied the standards established by the Florida Supreme Court in determining whether fundamental error has occurred when a trial court provides an unobjected-to, incorrect, or faulty instruction as to an affirmative *1166 defense. "`[T]he error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error,'" State v. Delva, 575 So.2d at 644-45 (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)), thus, denying the defendant due process and his right to a fair trial, Smith; Holiday. In applying these standards, the appellate courts consistently have found fundamental error in those cases where the erroneous instruction negates the defendant's sole defense to the crime charged. We, however, need not decide this case on that basis, as self-defense was not this defendant's sole defense.
The dissent argues that even if self-defense is not the defendant's sole defense, whenever the forcible felony portion of the self-defense instruction is given, absent an independent forcible felony, fundamental error will automatically and always result. We disagree.
In support of its position, the dissent cites to several cases in which the district courts have found fundamental error without specifically stating whether self-defense was the sole defense to the crime and without articulating the analysis performed. We first note that many of the cases listed in footnote six of the dissent, simply do not support this claim. In Hawk, Dunnaway, and Zuniga, self-defense was the defendant's sole defense,[2] and in Moore, Hawk, and Castillo, the defense timely objected and, therefore, no fundamental error analysis was performed![3]
An examination of the remaining cases cited by the dissent reveals that, while the appellate courts in those cases did not specifically state whether self-defense was the defendant's sole defense in the extremely brief opinions issued, the cases in which each relied, were cases in which self-defense was the defendant's sole defense.[4] *1167 As these opinions do not articulate the facts or the analysis performed, we conclude they are of no precedential value. Nor are most of the opinions issued during the pendency of this appeal. As these extremely brief opinions reveal very little, if anything, regarding the analysis performed or articulate the facts upon which they are based, we conclude that they too are of no precedential value.[5]

DID FUNDAMENTAL ERROR OCCUR IN THIS CASE?
The determination of whether fundamental error has occurred requires an analysis of all of the circumstances of the case. We, therefore, have carefully examined the record, the evidence presented, the defenses raised and argued, and the verdict rendered by the jury. After doing so, we conclude that fundamental error did not occur in this case. The evidence reveals that Ms. Rijo was stabbed numerous times including being stabbed in the back which was so deep that it punctured her lung. The defendant received only one minor ¼-inch cut to his pinky finger. This evidence is clearly inconsistent with a theory of self-defense. While the defendant claims in this appeal that self-defense was his sole defense, the record clearly demonstrates that self-defense was one of several of the theories of defense offered by the defendant. The defendant claimed intoxication, lack of premeditation, accident, and that Ms. Rijo's wounds were self-inflicted. In fact, his primary theory of defense was intoxication. Additionally, the jury found the defendant guilty of attempted first degree premeditated murder, which requires a finding that the defendant had a premeditated intent to kill the victim when he attacked her. Thus, based upon the evidence presented, the thrust of the defendant's theory of defense, and the verdict rendered, we find that there is no reasonable possibility that the instruction given contributed to the defendant's conviction or denied the defendant a fair trial. Therefore, the erroneous instruction did not constitute fundamental error in this case.

THE EVIDENCE PRESENTED; THE DEFENSES RAISED BY THE DEFENDANT; THE JURY'S FINDING OF A PREMEDITATED INTENT TO KILL
It is clear from a review of the entire record that the defendant's primary defenses were intoxication and lack of a premeditated intent to kill, which his attorney argued warranted a reduction in the charge, not an acquittal, which a finding of self-defense would produce. The defendant claimed that he and his girlfriend were both intoxicated, which caused their argument to escalate and for him to act irrationally, and he argued that he should be found guilty of aggravated battery, not attempted first degree premeditated murder, as there was no evidence of a premeditated intent to kill.
Even prior to the jury being questioned, the defendant's attorney told the judge, "I believe that the case is a legitimate Aggravated Battery . . . [T]hat's what the case, I think amounts to, two intoxicated people fighting." (emphasis added). His argument to the court was not that his client *1168 should be found not guilty because he acted in self-defense.
During voir dire, the defendant's attorney questioned the jury extensively regarding voluntary intoxication, a defense to attempted first degree premeditated murder, asking them about the effects of alcohol and the role alcohol may have played in this case. He asked a prospective juror, a physician, whether alcohol can cause an argument to escalate. He asked another juror, Ms. Bojnansky, about the effect alcohol had in her marriage and how it could cause a rational person to "do stupid things." He questioned Mr. Chitty about the effects of alcohol and asked Ms. DeArmas and Mr. Nix whether they believed that alcohol could affect a person's ability to think rationally, or to premeditate and plan. He concluded by telling the jury that "there is no question that something happened. There is no question that a person was cut and sustained injuries. The question is, what do we call it? Do we call it Battery? Do we call it Aggravated Battery? Do we call it, as the State is trying to do Manslaughter?," which he corrected to attempted first degree murder after an objection by the State.
At no time during jury selection did defense counsel address the issue of self-defense nor suggest that self-defense would be an issue in this case. Rather, he suggested that this was a case where alcohol diminished his client's ability to think, to premeditate, and to act rationally. He told the jury that the defendant and his girlfriend argued that night; the argument escalated; that because the defendant had been drinking, violence occurred; that there was no premeditation or intent to kill; and that the defendant was guilty only of aggravated battery. Thus, in voir dire, the defense to this case was that there was no premeditation either due to voluntary intoxication or because there was no intent to kill, and thus the defendant was guilty of a lesser charge, not that he should be acquitted because he used justifiable deadly force, self-defense.
In defense counsel's opening statement, he told the jury that the evidence would show that the defendant was "a jealous person, a possessive person, and [an] immature person" who became "bothered" by the nature of his girlfriend's work. He explained that the victim in this case, the defendant's girlfriend, Ms. Rijo, worked in a bar where her duties included sitting with the patrons and encouraging them to purchase drinks, and how this angered and frustrated the defendant. He explained that the defendant had been drinking and that this was "an accident waiting to happen," and "on August 11th of last year, the accident happened." He admitted that the defendant, who had been drinking that night, had become frustrated and angry when he saw Ms. Rijo sitting and talking with other men and that his "insecurity and inability to deal with this was again creating a situation that needed to be resolved," which resulted in "a spontaneous combustion," not a premeditated intent to kill.
In light of the testimony of the witnesses, it is clear why defense counsel chose not to rely upon a defense of "self-defense" and, instead, attempted to limit the defendant's culpability by trying to establish that the defendant and Ms. Rijo still loved each other; that they were drunk, which caused their argument to escalate; that the defendant was acting irrationally due to the alcohol he had consumed; that he did not intend to kill or hurt the victim; and that this was an aggravated battery, not a premeditated intent to kill. It should be noted that self-defense is a complete defense to the crime of attempted murder, not grounds for a reduction in the crime charged, and requires that the defendant acknowledge *1169 that he committed the acts, but that he did so out of necessity to protect himself from imminent deadly force. The defendant, however, consistently denied stabbing Ms. Rijo, insisting instead that her wounds were self inflicted.
The evidence is as follows: the victim, Ms. Rijo, testified that the defendant, who was her boyfriend, did not approve of the work she did and had tried to convince her to resign. She stated that when the defendant saw her drinking with the customers, it made him "nuts." On August 11, 2003, the defendant came to her workplace. He was drinking that night and the more he drank, the more upset he became, and Ms. Rijo decided to terminate their relationship because the defendant was so jealous. At 4:00 a.m., when Ms. Rijo finished work, her mother picked them up and took them back to her house where Ms. Rijo and the defendant were staying at the time. As Ms. Rijo undressed for bed, she told the defendant that she wanted to separate. The defendant went into the bathroom. When he returned, he came over to the bed where she was now lying, kneeled down, and asked her not to leave him. Ms. Rijo testified that the defendant was crying. Despite his pleas, Ms. Rijo told the defendant that she wanted to leave him, but told him to come to bed and they would discuss it further in the morning. The defendant, however, grabbed her by the neck and began choking her. While struggling on the bed with the defendant on top of her, Ms. Rijo felt the defendant stab her in the chest. The medical records and photographs # 1, # 4, and # 6 of State's Exhibit 3 reflect two serious stab wounds to the chest, each measuring several inches in length. One was to the center of the chest just below the neck and the other was above the left nipple of Ms. Rijo's breast. Ms. Rijo continued to struggle and tried to escape, but slipped in her own blood. While lying on the floor, the defendant continued to stab her throughout her entire body. Photographs # 1 and # 2 of State's Exhibit 4, and photographs # 2, # 3, # 5, # 6, # 7, # 8, and # 9 of State's Exhibit 5 corroborate her testimony, as they show a floor literally covered in blood with obvious smearing consistent with someone slipping in it and a struggle occurring on the floor.
Ms. Rijo testified that during the attack, she called out to her mother and tried to convince the defendant to stop his attack upon her, by telling him that she would not leave him. This too, was substantiated by her mother, Ms. Deisy Garcia, who also testified. Ms. Garcia testified that on August 11th, she was in bed when she heard her daughter screaming to her saying, "[M]ommy, run. Eric is killing me." Ms. Garcia immediately ran to her daughter's bedroom door, which she discovered was locked. She could hear her daughter inside the bedroom pleading with the defendant not to kill her, and telling him that she would not leave him. She heard her daughter beg the defendant to open the door and to let her mother in to help her.
Officer George Romo responded to the 911 call placed by Rolando Gomez, and arrived within approximately five minutes. Officer Romo testified that the victim's bed and the floor of her bedroom were covered in blood, as was the victim who was bleeding profusely. He noted multiple lacerations, including what he described as deep lacerations to the victim's arm, face, chest, back, and body. He testified that Ms. Rijo had severe lacerations on her forearm, the medial dorsal, her left hand, and behind her left arm, as well as a "sucking chest wound in the lower left cavity, on her back." He explained that the victim had multiple lacerations on her back which were not visible in the photographs that were introduced, and that the pictures were taken at the trauma center after the victim had been cleaned up and the *1170 wounds had been treated. He testified that the pictures did not accurately reflect what Ms. Rijo looked like when he first observed her, as she had been "covered in blood, from head to toe," and that she was "soaked in blood." According to Officer Romo, when he arrived, Ms. Rijo was pale and gray. She was stuttering, her hands were shaking, her eyes kept rolling back, she was going into shock, she was losing consciousness, and she was expiring.
Captain Hubbard, a paramedic who arrived with fire rescue, confirmed that Ms. Rijo's wounds were life threatening, and that he had her transferred to the trauma center. He, too, observed the numerous lacerations and puncture wounds suffered by the victim. When he asked her what had happened, she told him that her boyfriend had stabbed her.
The defendant, who fled the scene, was apprehended several blocks away. A straight-edged razor, covered in blood, was found in his pants pocket. The only injury the defendant received was a ¼-inch cut on his pinky finger which was cleaned and treated with a band-aid.
At the close of the State's case, the defendant's attorney, in arguing his motion for judgment of acquittal, told the trial court that he believed this case was an aggravated battery or, at best, an attempted second degree murder. He did not move for a judgment of acquittal on the basis of self-defense.
Faced with the difficult task of defending his client against this compelling evidence, including the quantity and severity of the victim's injuries, the defendant's attorney tried to minimize his client's exposure by attempting to raise reasonable doubt as to premeditation and the intent to kill. Defense counsel's cross-examination of the victim, Ms. Rijo, was therefore, directed towards the defenses he raised in voir dire and in his opening statement: that the defendant was intoxicated that night, that the argument between them escalated because the defendant was jealous and angry and had been drinking, and that the defendant did not intend to kill her because he loved her. He did not argue that her injuries were inflicted while the defendant was attempting to defend himself.
Similarly, defense counsel's questions of Ms. Rijo's mother, who heard Ms. Rijo's screams for help and ran to her rescue, were directed in support of his theory of the defense: that the defendant was intoxicated, that he loved Ms. Rijo, and that he had no premeditated intent to kill or to harm her. Specifically, he asked her if it was unusual that the door was locked and if the defendant appeared drunk that night.
The defendant also testified in this case. During direct examination, he testified consistently with the defenses raised throughout the trial: that he was drunk and angry and that he never intended to stab or harm Ms. Rijo. He explained that he was unhappy with Ms. Rijo's work and had tried to convince her to find different employment. He admitted that he was a jealous person and that when Ms. Rijo sat with other men, it upset him, and that, despite the fact that Ms. Rijo had told him not to come to her work, he went there that night and stayed for several hours drinking and playing pool. He testified that they argued, and when they got ready for bed, Ms. Rijo told him that she wanted to terminate the relationship, and he admitted that this embarrassed and bothered him because he loved Ms. Rijo. He stated that they decided to go to sleep and discuss it further in the morning and he claimed that he put on a pair of jeans and a t-shirt to sleep in, and laid out his work clothes for the morning. The defendant also testified that, as he was about to fall asleep, Ms. Rijo came at him with a razor *1171 and they struggled, and because they were both drunk, things just escalated out of control. He stated that he never intended to stab the victim with the razor. It was an accident.
On cross-examination, however, when the State began to probe the defendant and asked him why the razor was found in his pants pocket, when he was claiming that the victim allegedly attacked him with it, the defendant completely changed his story and stated instead, that the victim attacked him with a pair of scissors, not the razor, as he had claimed in direct examination, and that the razor was in his pocket the entire time because he planned on going to his father's house in the morning and was going to shave there. Thus, the defendant claimed that although he had laid out his work clothes for the morning, he put his razor in the clothes he intended to sleep in, not the clothes he expected to wear to work and to his father's home the next morning. Additionally, the defendant was not able to explain why the razor, which he claimed had never left his pants pocket, was covered in blood. When asked how the victim sustained her injuries, the defendant replied, "It's a problem between the two of us." When pressed on the subject, the defendant replied that they were arguing and fighting and rolling around in the room and hitting each other, and that Ms. Rijo's wounds were self-inflicted. When the State confronted the defendant with the fact that the only injury he had sustained was a tiny ¼-inch cut to his pinky finger and asked the defendant if this cut was what caused him to attack Ms. Rijo, the defendant's response was, "Like I said, man we were both very drunk." When the prosecutor kept pressing the defendant about his cut, he finally claimed for the first time in the entire trial that the victim attacked him with a pair of scissors and that he received the cut on his finger while trying to take the scissors away from her.
When asked about Ms. Rijo's injuries, the defendant did not claim that he stabbed her defending himself. Instead, the defendant claimed that the wounds were self-inflicted. When asked about the large laceration to Ms. Rijo's chest and breast bone, the defendant stated that these injuries must have occurred when she fell from the bed. When asked about the sucking wound to her back which caused her lungs to collapse, he replied that they were both drunk and that they "both made mistakes," and suggested that perhaps it was because she had slipped several times. Eventually, the defendant did admit that Ms. Rijo did not stab herself in the back. The injuries the defendant claimed Ms. Rijo must have received when she "fell," include several long slashing-type wounds to her face, her arms, the bottom of her foot, the inside of her fingers, several to her back, one which was deep enough to cause her lungs to collapse, and to her chest. What the defendant did say was that they were drunk and struggling, and that the victim's injuries were essentially accidental, which would, if believable, constitute "excusable attempted murder," not "justifiable use of deadly force" (self-defense).
A thorough review of the entire trial record shows that self-defense was not the primary or even much of a serious defense in this case. The defendant claimed that the only weapon involved was a pair of scissors. The only way Ms. Rijo could have been stabbed in the back, under her arm, in the back of her head, on the bottom of her foot, on her arm, and deep into her chest, was if the defendant had possession of the scissors, which would have left her unarmed. The defendant was not justified in using deadly force against an unarmed, injured woman, especially when the defendant was able to unlock the bedroom door and calmly walk *1172 out, as he testified he did when Ms. Rijo's mother came to the door.[6]
While the defendant raised the issue of self-defense when he testified, this was never the thrust of his defense. His defense throughout this case from before the jury selection began, throughout voir dire, opening statements, cross-examination of the State's witnesses, and through the defendant's closing arguments, was that this was an aggravated battery, which occurred because the defendant had been drinking and because he was jealous and angry, not that the defendant was justified in using force likely to cause death or serious bodily injury.
Even after the defendant's testimony, his attorney argued that this case was an aggravated battery, born out of the defendant's jealousy. His attorney argued, "this case is an illustration of what poor judgement does. It becomes obvious that Eric is not mature enough. He's too insecure and he's jealous to be able to deal with that kind of relationship, where a girl works as a barmaid, in essence, call it what you want, hustling drinks and drinking with the patrons. . . . Eric can't deal with this . . . [and] this thing began building and building and building." His lawyer then suggested that Ms. Rijo may have started the argument and may have struck the defendant, "which, in turn, cause[d] [the defendant] to then grab a scissors and inflict a wound, almost in a frenzy. I mean, when you look at the wounds both the number and type of wounds, there is no other explanation other than it was almost a mad frenzy of activity." His attorney then argued, "If you follow the law, you cannot convict of Attempted First Degree Murder, because that isn't what happened here. There are other lesser includeds that are more appropriate." His lawyer then explained attempted second degree murder to the jury and concluded by telling them that:
Those are the elements of Attempted Second Degree Murder that I suggested to you might be much more appropriate in this case. But, I think when you get down to the bottom line, and you try to do the balancing act here, of finding some ground that seems to be fair and just, probably Aggravated Battery. I said that to you in the beginning. That's what this case is.
In his final rebuttal argument, defense counsel again implored the jury to find the defendant guilty of aggravated battery, not attempted first degree murder, and clearly abandoned any pretext that the defendant should be acquitted because his use of deadly force was justifiable. In fact, at no time did counsel ever suggest during the trial that the defendant should be acquitted because his attack upon the victim was justifiable use of deadly force. For example, defense counsel stated, "An Aggravated Battery, that's the correct, right result for these facts;" "[i]f you agree with me, and I have convinced you, . . . an Aggravated Battery is the right result. That's what it will be. If I have failed to persuade you, well then your verdict will be what you feel is justice in this case;" and "[t]he right result here is an Aggravated Battery. Thank you."
The dissent claims that "the transcript of the closing arguments demonstrates that the defense (self-defense) was a feature of [the defendant's] closing [argument]" and that "[d]efense counsel's closing argument strongly urged the jury to consider that the defendant acted in self-defense." In support of this claim, the dissent cites to three brief references, taken *1173 out of context, in defense counsel's closing argument. A fair reading of defense counsel's closing argument, reflects that self-defense was hardly the "feature" of counsel's argument and, in fact, was not even mentioned in defense counsel's rebuttal closing argument. A more complete examination of what defense counsel argued reveals quite the contrary. We have, therefore, included the passages omitted in the dissent:
[T]his case is an illustration of what poor judgement does. It becomes obvious that Eric is not mature enough. He's too insecure and he's jealous to be able to deal with that kind of a relationship, where a girl works as a barmaid, in essence, call it what you want, hustling drinks and drinking with patrons.
. . .
Eric can't deal with this. Because apparently he's one of those men that is bothered by the simple fact that his girl is talking to some guy.
. . .
[S]he wasn't going to change. And apparently his attitude about it wasn't going to change. So, what happens, it's obvious from the testimony that this thing began building and building and building.
. . .
There is yelling, probably hitting or shoving. And finally things escalate into a violent situation. . . . And then I talked about throwing in the alcohol. . . . [T]his was a mixture that was becoming more and more volatile.
. . .
[A]ll of you have seen people under the influence, how they act, how they think, what happens to what you think should have been rational behavior. And again, you take the jealously, the insecurity, perhaps possessive or over possessiveness of one. Mix it with alcohol, both his drinking and her drinking and again the potential is there for a violent confrontation.
. . .
However the State doesn't know when enough is enough, that they don't achieve or seek to achieve any balance here. You heard the victim who stated I love him. I want him to get some help. Well, that presupposes some sort of a resolution less than the guy being convicted and being launched into the next galaxy. But the State, by filing the most serious charge, one of the most serious charges of Attempted First Degree Murder, sends a message to the jury or anybody whose [sic] listening, we want this guy launched. We want him buried. I come to you and from the beginning I have said this shouldn't have happened. I, in no way ever would condone violence, let alone domestic violence. But rather confronted with this fact, the situation, is there some middle ground that we can find to resolve this case, that will achieve both ends?
. . .
One of the biggest problems in this case is what really happened in that bedroom. Can we ever be sure what happened? We know the result.
. . .
Did she start the fight? Was her anger the catalyst, you know? Did the drinking by both of them in a situation where rational thoughts and rational conversations is no longer possible, that would fly into a rage striking him, which, in turn, causes him to then grab a scissors and inflict a wound, almost in a frenzy. I mean, when you look at the wounds *1174 both the number and type of wounds, there is no other explanation other than it was almost a mad frenzy of activity.[7]
. . .
If you follow the law, you cannot convict of Attempted First Degree Murder, because that isn't what happened here. There are other lesser includeds that are more appropriate. That is, for instance, Attempted Second Degree Murder. And when you hear that instruction, you might very well agree that an act is imminently dangerous to another, demonstrating a depraved mind. If it is an act or series of acts that a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another and is done from ill will, hatred, spite or evil intent and is of such a nature that the act itself indicates an indifference to human life. Those are the elements of Attempted Second Degree Murder and I suggested to you might be much more appropriate in this case. But, I think when you get down to the bottom line, and you try to do the balancing act here, of finding some ground that seems to be fair and just, probably Aggravated Battery. I said that to you in the beginning. That's what this case is. The State has attempted to ratchet it up.
(emphasis added).
In rebuttal, defense counsel abandoned any pretense of arguing justifiable use of deadly force (self-defense) and urged the jury to find his client guilty of aggravated battery, not attempted first degree murder.
An Aggravated Battery, that's the correct, right result for these facts. I can't explain the frenzy. I can't explain the stab wound. But, neither can he.
. . .
I have urged you. This is no more than an Aggravated Battery. Obviously your verdict will reflect your thoughts. If you agree with me, and I have convinced you that it is [sic] an Aggravated Battery is the right result. That's what it will be. If I have failed to persuade you, well then your verdict will be what you feel is justice in this case.
. . .
The right result here is an Aggravated Battery. Thank you.
We conclude, therefore, that self-defense or justifiable use of deadly force was not the defendant's sole defense, it was not his primary defense, it was not a serious defense based on the facts, and certainly was not a "feature" of defense counsel's closing argument. Even the defendant, himself, never claimed that he stabbed the victim defending himself from force likely to cause great bodily harm. He claimed, instead, that the victim's injuries were self-inflicted and accidental. Not once did he admit to using any deadly force himself, or claim that he had to use deadly force to defend himself.
In an attempt to diminish the defendant's primary defense, which was intoxication, the dissent claims that defense counsel's argument regarding this defense during closing argument was made to counter the State's charge of premeditation, and was offered as an alternate theory of defense. Again, the dissent misreads the majority opinion which recognizes the various theories of defense offered by the defendant. We have consistently stated throughout the majority opinion that "self-defense or justifiable use of deadly force was not the defendant's sole defense, it was not his primary defense, it was not a *1175 serious defense based on the facts, and certainly was not a `feature' of defense counsel's closing argument. . . . Self-defense was also legally untenable based upon the jury's finding that this was a premeditated attempt to murder the victim." As self-defense was a defense offered at trial, albeit a dim theory only half-heartedly argued, we agree that the defendant was entitled to a self-defense instruction. Based upon the evidence presented, the arguments made, and the verdict rendered in this case, the defendant is, however, not entitled to a new trial based upon the unobjected-to instruction given, because in this case fundamental error clearly did not occur.
The dissent also incorrectly reads the majority opinion as applying a harmless error analysis. The analysis performed by the majority is the fundamental error analysis articulated by the Florida Supreme Court, which requires that when an erroneous instruction is given regarding a defense which counsel did not object to, the error must be so great that it reaches down into the validity of the trial itself and extinguishes the defendant's right to a fair trial and due process before it will be deemed to constitute fundamental error requiring a reversal. A review of the record is thus required, and the record in this case demonstrates why fundamental error did not occur. Fundamental error did not occur based upon the actual defenses argued in the case; the evidence which is wholly inconsistent with a theory of self-defense; and the jury's finding of premeditation. The defenses argued were intoxication, lack of premeditation, and no intent to kill. Self-defense, at best, was a dim theory unsupported by the evidence. Self-defense was also legally untenable based upon the jury's finding that this was a premeditated attempt to murder the victim. A finding of a premeditated intent to kill totally negates a finding of self-defense. Based upon the jury's finding of premeditation, the self-defense instruction was meaningless in this case and the erroneous instruction clearly did not contribute to the defendant's conviction.

CONCLUSION
After a thorough review of the trial record, we find that, because self-defense was not the defendant's sole defense; it was not his primary defense; it was a defense unsupported by the evidence; and because the jury found that the defendant had a premeditated intent to kill, there is not a reasonable possibility that the erroneous portion of the self-defense instruction which was given, contributed to the defendant's conviction, denied the defendant due process of law, or denied the defendant his right to a fair trial. Thus, we find no fundamental error and affirm the defendant's conviction for attempted first degree premeditated murder.
Affirmed.
CORTIÑAS, J., concurs.
GREEN, J. (dissenting).
There is no dispute that giving the "forcible felony" exception instruction in this case, where the defendant was only charged with one felony, was error. This court's recent opinion, Grier v. State, 928 So.2d 368 (Fla. 3d DCA 2006), so holds. Had there been an objection, Florida courts have uniformly found it to constitute reversible error.[1] More importantly, *1176 before today's decision, in the absence of a contemporaneous objection  as in this case  every court in Florida has uniformly found that giving this instruction constitutes fundamental error and warrants a new trial.[2]
The forcible felony exception instruction is based on section 776.041(1), Florida Statutes (2002), and should only be given when a defendant claiming self-defense is also charged with a separate forcible felony. Giles v. State, 831 So.2d 1263, 1265 (Fla. 4th DCA 2002).[3] To do otherwise completely negates a defendant's self-defense claim. Barnes v. State, 868 So.2d 606, 607-08 (Fla. 1st DCA 2004). Here, the defendant was charged with one felony; therefore, I believe, as have all our sister courts, and in keeping with the holding in Grier, that the court fundamentally erred in giving the instruction. The conviction should be reversed.
Despite the majority's loquacious exposition, the opinion is simply faulty for three reasons: First, the Florida Supreme Court has never limited the application of fundamental error analysis to jury instructions on elements of the offense. To the contrary, Florida Supreme Court case law demonstrates that the analysis is equally applicable to defense instructions. Second, our sister courts have not limited application of fundamental error to cases where the defendant's sole defense was self-defense; in many cases the courts do not even discuss the existence of one or more defenses. Third, notwithstanding the majority's contention to the contrary, the trial transcript unequivocally shows that the defense did not abandon the self defense theory.
As its first premise, the majority claims that the Florida Supreme Court has applied fundamental error only to cases where the error goes to an instruction on an element of the charged crime, not to a defense instruction. Indisputably, Sochor v. State, 619 So.2d 285, 290 (Fla.1993), did find that "[f]ailure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error." In Sochor, however, the error was in the failure to give an instruction; Sochor did not address a scenario where the court gave a defective, misleading or erroneous instruction. Many years earlier, the high court made it quite clear that failure to properly define elements of a crime, as well as failure to properly charge on the law relative to the defense, was equally *1177 prejudicial to the accused and misleading. Motley v. State, 155 Fla. 545, 20 So.2d 798, 800 (1945). The court clarified this again, seven years after Sochor, in Holiday v. State, 753 So.2d 1264 (Fla.2000), reviewing an error in a defense jury instruction. Holiday specifically stated that Sochor did not control the fundamental error question in that case. "After reviewing Sochor, we find that, while persuasive, such decision does not control the fundamental error question in this case," where the court does not instruct the jury properly on a defense. Holiday, 753 So.2d at 1269. Hence, the majority's reliance upon Sochor is simply misplaced.
Curiously, if the majority's analysis is correct, every other case in this state finding fundamental error in the giving of the forcible felony instruction  a defense instruction  would be in conflict with Sochor. Yet, to date, the Florida Supreme Court has consistently denied discretionary review of the various decisions where the State has raised this purported conflict with Sochor.[4] In these cases, the State unsuccessfully asserted that these decisions were "in conflict with decisions of the [Florida Supreme] court holding that errors in instructions on affirmative defenses are not fundamental error." Pet'r Br. on Jurisdiction at 5, State v. Carter, No. SC04-2442, 2004 WL 3093723 (filed Jan. 3, 2005). At a minimum, the majority must certify conflict with these decisions on this basis alone.
The majority opinion's second faulty premise is its conclusion that the other district courts have found that giving this instruction is fundamental error only where self-defense was the defendant's sole defense. The cases from our sister courts amply and adequately explain why giving the instruction used in this case, in the absence of a second forcible felony charge, prejudices the defendant by negating his self-defense claim. This instruction confuses and misleads the jury as to the defendant's defense. Fair v. State, 902 So.2d 965 (Fla. 4th DCA 2005); Hardy v. State, 901 So.2d 985 (Fla. 4th DCA 2005); Dunnaway v. State, 883 So.2d 876 (Fla. 4th DCA), review denied, 891 So.2d 553 (Fla.2004). Absent from those opinions is any discussion that self-defense must be the sole defense raised. While some of those cases do refer to self-defense as being the sole defense,[5] others do not.[6] The reason is because it is wholly irrelevant to the uniform holdings of this state's courts that it is fundamental error to give a forcible felony instruction when the defendant has been charged with only one felony.
The third erroneous premise of the majority opinion, which undermines its holding, is its assertion that the self-defense defense was somehow abandoned at the trial below. The record before us amply belies any such assertion.[7] Not only was the defense not abandoned, the transcript of the closing arguments demonstrates *1178 that this defense was a feature of the closing arguments by both parties.
Defense counsel's closing argument strongly urged the jury to consider that the defendant acted in self-defense.
[Defense counsel]: [O]ne of the biggest problems in this case is what really happened in that bedroom . . . [D]id she start the fight? Was her anger the catalyst, you know?
* * *
You may believe he acted in self-defense. She started the process. Remember, it took her a very, very long time to answer. She even refused to answer for at least two or three minutes. The question, did you stab Eric first? And she refused to answer it, which suggests to me that she probably did start the process, because she was the one who was angry?"
* * *
She was unhappy. She was angry. So, it's very likely that she started the process. That she started the process by stabbing him and suddenly things escalated beyond the wildest dreams of anybody. . .
Defense counsel sums up his closing by saying that, at best, this is an aggravated battery. In the context of the entire defense closing, I fail to see how this constitutes the abandonment of the self-defense defense.
The State, in return, repeatedly emphasized throughout its closing that, in light of the evidence, it felt that the self-defense defense was untenable. During the State's closing, self-defense is mentioned at least seven times. The prosecutor even reiterated the interplay of the self-defense and forcible felony exception instructions for the jury by stating, "In other words, if the defendant was committing an Attempted Murder against [the victim] or engaging in said Battery against her, then he cannot now say oh, yeah and I had to use deadly force, because she then attacked me with a deadly weapon."
It is certainly true that during closing defense counsel argued that both the defendant and the victim were intoxicated during the altercation. That argument, however, was not advanced to abandon the self-defense defense as suggested by the majority. This argument was made to counter the state's charge of premeditation. See Davis v. State, 915 So.2d 95 (Fla.2005)(evidence of intoxication introduced to counter state's premeditation charge). Even the prosecutor recognized as much and made the following argument to the jury during closing:
You may consider whether or not they were drinking alcohol for the purpose of determining whether or not the defendant had a specific intent to commit to [sic] the attempted premeditated murder under the law. . . .
(Emphasis added).
It is also true that the defense concluded its closing argument by asserting that, at best, the defendant was guilty only of the lesser included offense of aggravated battery. However, an argument for a lesser included offense does not constitute an abandonment of the self-defense defense as opined by the majority. At best, it can be said that this was a permissible alternative theory to the defendant's self-defense claim for the jury's consideration. Under Florida law, criminal defendants are entitled to advance alternative theories and may indeed advance inconsistent defenses as long as the proof of one does not necessarily disprove the other.[8]See Wright v. *1179 State, 705 So.2d 102 (Fla. 4th DCA 1998)(a lack of memory does not irreconcilably disprove a self-defense claim so instruction on justifiable use of non-deadly force should be given if requested); Wright v. State, 681 So.2d 852 (Fla. 5th DCA 1996)(no self-defense jury instruction required where defendant denied kicking or hitting arresting officers, asserting that he offered no resistance at all in the face of excessive police force); Kiernan v. State, 613 So.2d 1362 (Fla. 4th DCA 1993)(evidence suggesting stabbing was accidental does not vitiate entitlement to self-defense instruction where there is also evidence supporting the justifiable use of force defense); Richardson v. State, 251 So.2d 570 (Fla. 4th DCA 1971)(no error in failing to charge on self-defense where the defendant contended that a shooting was committed by an unknown bar patron). In this case, the alternative arguments for self-defense and the lesser included offense of aggravated battery did not necessarily disprove each other and were permissible in this case as a matter of law. Most certainly, it cannot be reasonably or legally concluded that the advancement of a guilty verdict for the lesser included offense of aggravated battery constituted a waiver or abandonment of the claim to self-defense as opined by the majority. If that were the law of this state, no criminal defendant would ever be able to advance effectively alternative defense theories.
Hence, in no way can self-defense be considered abandoned or waived. In fact, the state's closing argument in this case highlights the very reason why our sister courts have uniformly concluded that giving this instruction, when a defendant is only charged with one felony, is fundamental error.
In conclusion, it is apodictic that a defendant is entitled to a correct instruction on his or her theory of the defense if any evidence supports that theory and that theory is valid under Florida law. Giles; Goode v. State, 856 So.2d 1101, 1104 (Fla. 1st DCA 2003); Wright v. State, 705 So.2d 102, 104 (Fla. 4th DCA 1998)("a defendant is `entitled to a jury instruction on his theory of the case if there is any evidence to support it,' no matter how flimsy that evidence might be."); Lozano v. State, 584 So.2d 19, 25 (Fla. 3d DCA 1991)("a proper jury instruction in a criminal case is a fundamental right")(citing Rojas v. State, 552 So.2d 914 (Fla.1989)); Vazquez v. State, 518 So.2d 1348 (Fla. 4th DCA 1987)(the failure to give a requested self-defense instruction held fundamental error where the evidence warranted the instruction). The majority opinion today effectively rewrites this fundamental tenet to hold that a defendant is entitled to a correct defense jury instruction as long as an overwhelming amount of evidence of guilt hasn't been introduced against that defendant. Presumably then, according to the majority, the incorrect jury instruction is harmless error. In light of well-established law in this state, I cannot join in such reasoning.
Based on the foregoing, I would therefore reverse the conviction and remand for a new trial.
NOTES
[1] In Thomas, "the defendant's theory of defense was justifiable force." Id. at 254.
[2] Hawk v. State, 902 So.2d 331, 332 (Fla. 5th DCA 2005)(Hawk testified that he acted in self-defense to an unprovoked attack by Jones); Dunnaway v. State, 883 So.2d 876, 879 (Fla. 4th DCA 2004)("We determined in Giles that this instruction was misleading, and it was reasonably possible that it contributed to Giles' conviction under circumstances similar to this case. In addition, we have held that fundamental error results where an inaccurate and misleading instruction negates a defendant's only defense.") (citations omitted); Zuniga v. State, 869 So.2d 1239, 1240 (Fla. 2d DCA 2004)("Although Zuniga did not raise this issue at trial, we conclude that the erroneous instruction was fundamental error in this case. The only disputed issue at trial was whether Zuniga acted in self-defense.").
[3] The dissent's reliance on the following cases is misplaced, as in each, defense counsel objected to the instruction. Moore v. State, 912 So.2d 1252 (Fla. 2d DCA 2005)(withdrawing its previously issued opinion where it had found fundamental error, and applying a harmless error analysis as defense counsel timely objected to the instruction given); Hawk, 902 So.2d at 332 (while appellate court failed to identify its standard for review, Hawk argued on appeal that the instruction was given over his objection); Castillo v. State, 896 So.2d 973 (Fla. 5th DCA 2005)(finding that trial court erred in giving the instruction over defense objection).
[4] Velazquez v. State, 884 So.2d 377 (Fla. 2d DCA 2004), relied upon Zuniga, Baker, and Giles; Bates v. State, 883 So.2d 907 (Fla. 2d DCA 2004), relied upon Rich, Giles, and Baker; Cleveland v. State, 887 So.2d 362 (Fla. 5th DCA 2004), relied upon Zuniga and Rich; Ruiz v. State, 900 So.2d 733 (Fla. 4th DCA 2005), relied upon Dunnaway, Hickson, Rich, and Giles; Craven v. State, 908 So.2d 523 (Fla. 4th DCA 2005), relied upon Rich, Giles, Estevez, and Dunnaway; Federic v. State, 909 So.2d 458 (Fla. 4th DCA 2005), relied upon Craven, Rich, and Giles; Carter relied on Rich, Zuniga, and Dunnaway; Williams relied upon Rich; and Brown v. State, 909 So.2d 975 (Fla. 2d DCA 2005), relied upon Bates, Velazquez, and Zuniga. As discussed earlier, in Giles, Zuniga, Rich, Dunnaway, Hickson, and Estevez, self-defense was the defendant's sole defense. The only other case relied upon is Baker, where the issue was never ruled upon because, despite being granted a belated appeal, Baker did not file one.
[5] Swanson v. State, 921 So.2d 852 (Fla. 2d DCA 2006); Humbert v. State, 922 So.2d 997 (Fla. 2d DCA 2005); Granberry v. State, 919 So.2d 699 (Fla. 5th DCA 2006); Houston v. State, 919 So.2d 489 (Fla. 2d DCA 2005); Shepard v. Crosby, 916 So.2d 861 (Fla. 4th DCA 2005); Newcomb v. State, 913 So.2d 1293 (Fla. 2d DCA 2005); Brozey v. State, 911 So.2d 867 (Fla. 2d DCA 2005); Brown v. State, 909 So.2d 975 (Fla. 2d DCA 2005).
[6] "The fact that the defendant was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if by retreating he could have avoided the need to use force." Dias v. State, 812 So.2d 487, 492 (Fla. 4th DCA 2002).
[7] The emphasized portions of this transcript are the portions not provided by the dissent, when referring to this specific portion of defense counsel's argument.
[1] In cases where there has been an objection, our sister courts have uniformly found that giving this instruction where defendant was only charged with one felony is reversible error; no harmless error has been found. Barnes v. State, 868 So.2d 606 (Fla. 1st DCA 2004); Moore v. State, 912 So.2d 1252 (Fla. 2d DCA 2005); Hernandez v. State, 884 So.2d 281 (Fla. 2d DCA 2004); Federic v. State, 909 So.2d 458 (Fla. 4th DCA 2005); Giles v. State, 831 So.2d 1263 (Fla. 4th DCA 2002); Castillo v. State, 896 So.2d 973 (Fla. 5th DCA 2005).
[2] Grier v. State, 928 So.2d 368 (Fla. 3d DCA 2006); Humbert v. State, 922 So.2d 997 (Fla. 2d DCA 2005); Houston v. State, 919 So.2d 489 (Fla. 2d DCA 2005); Newcomb v. State, 913 So.2d 1293 (Fla. 2d DCA 2005); Brozey v. State, 911 So.2d 867 (Fla. 2d DCA 2005); Brown v. State, 909 So.2d 975 (Fla. 2d DCA 2005); Bevan v. State, 908 So.2d 524 (Fla. 2d DCA 2005); Bates v. State, 883 So.2d 907 (Fla. 2d DCA 2004); Velazquez v. State, 884 So.2d 377 (Fla. 2d DCA), review denied, 890 So.2d 1115 (Fla.2004); Zuniga v. State, 869 So.2d 1239 (Fla. 2d DCA 2004); Shepard v. Crosby, 916 So.2d 861 (Fla. 4th DCA 2005); Craven v. State, 908 So.2d 523 (Fla. 4th DCA 2005); Ruiz v. State, 900 So.2d 733 (Fla. 4th DCA 2005); Williams v. State, 901 So.2d 899 (Fla. 4th DCA), review denied, 913 So.2d 598 (Fla.2005); Hardy v. State, 901 So.2d 985 (Fla. 4th DCA 2005); Dunnaway v. State, 883 So.2d 876 (Fla. 4th DCA), review denied, 891 So.2d 553 (Fla.2004); Rich v. State, 858 So.2d 1210 (Fla. 4th DCA 2003); Sloss v. State, 30 Fla. L. Weekly D2328, 2005 WL 2396309 (Fla. 5th DCA 2006); Hawk v. State, 902 So.2d 331 (Fla. 5th DCA 2005); Harvey v. State, 897 So.2d 556 (Fla. 5th DCA 2005); Carter v. State, 889 So.2d 937 (Fla. 5th DCA 2004), review denied, 903 So.2d 190 (Fla. 2005); Cleveland v. State, 887 So.2d 362 (Fla. 5th DCA 2004).
[3] Accord Grier; Barnes; Houston; Brozey; Moore; Bates; Velazquez; Hernandez; Zuniga; Shepard; Federic; Craven; Williams; Fair v. State, 902 So.2d 965 (Fla. 4th DCA 2005); Dunnaway; Rich; Sloss; Hawk; Carter; Cleveland.
[4] State v. Harvey, 909 So.2d 862 (Fla.2005)(denying review); State v. Carter, 903 So.2d 190 (Fla.2005)(denying review); State v. Dunnaway, 891 So.2d 553 (Fla.2004)(denying review); State v. Velazquez, 890 So.2d 1115 (Fla.2004)(denying review).
[5] Barnes; Bevan; Hernandez; Fair; Hardy; Rich; Giles.
[6] See Brown; Moore; Bates; Velazquez; Zuniga; Federic; Craven; Ruiz; Williams; Dunnaway; Hawk; Castillo; Carter; Cleveland. See also Respondents Answer Brief on Jurisdiction at i, State v. Harvey, No. SC05-704 (filed May 19, 2005), where we learn that self-defense was the defendant's sole defense. The Fifth District, however, never recited this fact in its opinion. Harvey, 897 So.2d at 556. This omission indicates that this fact was not germane to the court's analysis that fundamental error had occurred.
[7] Indeed, if this defense had been abandoned as the majority opines, the request for and/or acquiescence to this self-defense jury instruction by both parties makes absolutely no sense. Jury instructions are not requested and/or given for matters that are not at issue.
[8] Federal law similarly permits the raising of inconsistent defenses. See Mathews v. United States, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)(even if defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment); Stevenson v. United States, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896)(although evidence was sufficient to entitle the defendant to a manslaughter instruction, the defendant was nevertheless entitled to self-defense instruction even though self-defense claim was inconsistent with claim that defendant killed in the heat of passion); Johnson v. U.S., 426 F.2d 651, 656 (D.C.Cir.1970)(defense in a rape case was permitted to argue that the act did not take place and that the victim consented).